7  535.
83  216
7  535
118  372

## SAYRE v. NICHOLS.

The word "*agent*," appended to the signature of the agent, is not mere "*descriptio personæ*," but is the designation of the capacity in which he acted.

Where a bill of exchange was headed with the name of a banking-office, and when paid, was to be charged to that office, and was signed by a person *as agent: Held*, that the agent was not personally responsible thereon.

An agent cannot delegate discretionary powers, but he may delegate mere mechanical powers or duties.

APPEAL from the District Court of the Sixth Judicial District.

Sayre, the holder of the following draft, after protest for non-payment, sued the defendant, C. P. Nichols, thereon:

$3000.                                                    No. 2123.
ADAMS & Co.'s EXPRESS AND BANKING HOUSE, }
                Mormon Island, Feb. 21, 1855.          }

Pay to A. G. Sayre, or order, three thousand dollars, value received, and charge same to account of this office.

C. P. NICHOLS,
Per   G. W. COREY,   Agts.

To Messrs. ADAMS & Co., Sacramento.
Endorsed, "A. G. Sayre, G. W. C."

The testimony introduced, under the exception of plaintiff, showed the defendant was the agent of Adams & Co. at Mormon

Island, and that Corey was his clerk, who had been authorized to sign defendant's name to drafts, and that papers so signed had been paid at various times by Adams & Co.; that Corey was in the employ of Adams & Co., and was paid by Adams & Co.; that the firm of Borland & Sayre, of which plaintiff was a member, deposited with Adams & Co.; that Corey, in signing the bill, intended to place the word "agent" opposite the name of defendant. There was also evidence showing that the fact was notorious that "defendant" was only engaged in selling drafts as the agent of Adams & Co. The Court below gave the jury the following instruction, to which plaintiff objected:

"If you believe, from the evidence, that the plaintiff, when he took the draft, knew that Nichols was acting as the agent of Adams & Co., and that he purchased the draft, knowing, at the time, that Nichols signed it as the agent of Adams & Co.; and that he took the draft, knowing it to be the draft of Adams & Co.; and in purchasing it, purchased it on the credit or faith of Adams & Co., and not on the individual credit of Nichols, then you will find for the defendant; otherwise, for the plaintiff."

The jury found for the defendant, judgment being rendered thereon. Plaintiff appealed.

*Ralston & Wallace* for Appellant.

The appellant in this case insists that no evidence, parol or oral, can be introduced to vary, explain, or in any wise contradict the terms of a written instrument, unambiguous, intelligible, and complete.

In this case, the bill, or check, in controversy, is composed of perspicuous, unambiguous terms, at once bringing it within the ordinary rules of construction without reference to extrinsic or collateral matter, or the light of surrounding circumstances.

Nothing is clearer than the general rule, that "*patens ambiguitas*," being intrinsic, cannot be remedied by the introduction of parol evidence.

In support of the above positions, appellant invites the attention of the Court to the following authorities, which he deems conclusive:—Stackpole v. Arnold, 11 Mass. R., 27; Pentz v. Stanton, 10 Wend., 271; Hill v. Bannister, 8 Cowen, 31; 2 Phillips' Ev., 350; 2 Starkie's Ev., 354, to § 58; Hunt v. Adams, 7 Mass. R., 83; Johnson v. Dalton, 1 Cowen, 543; Shunkland v. The City of Washington, 5 Peters' R., 394; Snyder v. Hurd, 8 Texas R., 98; Mott v. Hicks, 1 Cowen, 513; 1 Greenleaf's Ev., 359.

From an examination of the foregoing authorities, it will be apparent that the position of appellant, as to the inadmissibility of unwritten testimony to vary or explain that which is written, is fully sustained, being the common law doctrine on the subject.

The construction of all contracts and documents is for the ad-

judication of the Court, and not the jury. Dwinelle *v.* Henriquez, 1 Cal. R., 387.

The maxim of the common law, " *Delegata potestas non potest delegari,*" is applicable in this case. Nichols, as agent of Adams & Co., exercised only a delegated authority from Adams & Co. He could not delegate the power to Corcy, being a trust reposed in him personally by the principal, confiding in his ability to perform the duties of the trust.

Finally, the appellant insists that the Court have decided that the draft, or check, in controversy, is that of respondent, Nichols, and that he is, from the terms of the same, liable. The decision of this Court, upon said bill, or check, to the effect that the word " agents" is simply " *descriptio personæ,*" and does not affect the liability of the respondent in this case, is conclusive on this point. See the case of Sayre *v.* Nichols, October Term, 1855.

*Robinson, Beatty & Botts,* for Respondent.

In the cases cited by the appellant, the name of the principal nowhere appears upon the face of the instrument sued on. Now this draft differs from the promissory notes in those cases, inasmuch as it appears on the face of this draft, that it was headed " Banking House of Adams & Co.," and is addressed to Adams & Co., the alleged principals. In Brockway *v.* Allen, 17 Wend., 40, the Court held that the defendants, who had been sued upon a promissory note which they had signed with their names, adding thereto their names, " Trustees of Baptist society," might show by parol that the note was given by them as agents of a corporation, for a debt of the corporation, and that these facts were known to the payee.

But the words of this draft " charge the same to account of this office," are pregnant with meaning. To whom is the amount of a bill of exchange to be charged? Why to the drawer, of course, and, *e converso,* who is the drawer? Why he who has received the consideration, and to whom the amount is to be charged. And who is this in the case before us? Who can it be but the office at Mormon Island, to which the consideration was paid, and to which the draft was to be charged.

Burnett, J., delivered the opinion of the Court—Terry, J., concurring.

This case was before this Court at the October Term, 1855, 5 Cal. Rep., 487, when the judgment of the District Court was reversed and the cause remanded. Another trial was had, and a verdict and judgment given for defendant, from which the plaintiff again appeals to this Court. A copy of the bill is given in the report of the case, which is correct except in one particular. Instead of the word " agent," at the end of Nichols' name, it

should have been thus: " C. P. Nichols, per George W. Corey, agents."

It was decided by this Court, when the case was up before, that the word "agent," appended to the name of the agent, had always been held as merely *descriptio personæ*, and in no respect affected his liability. The current of decisions certainly supports this view. But I confess I could never·understand the reason upon which this rule was founded. When a party appends to his name the place of his residence, as, for example, Charles Carroll, of Carrolton, or affixes a letter to his name, as John Smith, T., I can well understand that he intends by this a description of the person; but when he appends the term, *agent*, or other term of like import, I cannot understand it as a description of the person, but I take it to be a clear designation of the *capacity* in which the party acts. To use the *general* word *agent*, as descriptive of a *particular* person, would seem to be entirely improper. And as the sole object of a Court in construing written instruments, is to arrive at the true intention of the parties, it would seem that this rule has been established by explaining the true meaning of the instrument entirely away, contrary to the good sense of the thing, and the evident intent of the parties. For I cannot believe that a person signing his name and appending the word "*agent*" to it, ever did intend any thing else than a designation of the capacity in which he acted. If a party sign a promissory note, and append to his name the word "security," or "surety," he only means to bind himself *as such* and not as a principal. Bryan *v.* Berry, October Term, 1856; Lightstone *v.* Laurencel & Sainsevain, 4 Cal. Rep., 277. So, if a party append to his name the word "agent," he clearly designates the capacity in which he acts, and he thus designates such capacity for the evident purpose of showing that he intends to bind himself only in that capacity. By assuming to act as agent he does guaranty his *authority* thus to act, and no more. The party who takes the paper is not bound to take it in that form. He is bound to know the contents of the paper, and knowing the contents, he is bound by the express intention of the party signing it. There can be no difference in principal, as there is no difference in the interest, between the case of a surety appending the word "surety" to his name, and the case of an agent appending the word "agent." And to use the forcible language of this Court in the case of Bryan *v.* Berry: "Is not the meaning, sense, and information, conveyed alike in both cases?" And I must think that this rule, which seems to do entire justice to the plain intention of the parties, has forced the Courts to admit parol testimony in many cases, to explain or vary the terms of written instruments, in violation of that statutory rule, that when the meaning can be collected from the writing, that meaning must prevail. The rule that the word

Sayre *v.* Nichols.

"agent," appended to the name of the agent, is merely a description of the person, is not, in my view, sustained by common sense; and when a rule is not sustained by common sense, well understood and legitimately applied, it is certain to be wrong.

But conceding the rule to exist, as laid down in the former opinion in this case, will it apply to the bill upon which this suit is brought?

The case of Stackpole *v.* Arnold, 11 Mass. R., 207, has been cited and relied upon by the learned counsel for the plaintiff, and seems to lay down the proper rule upon this subject. The notes, in that case were executed by Cook & Foster, who signed their own names, without any qualification. There was nothing upon the face of the notes to show that they executed them as agents, or for the defendant. The fact that they were agents of defendant, and the transaction was for his benefit, was indeed proved, by parol, but this proof made the notes different instruments from what they purported to be upon their face; and the clear and intelligible rule established by the Court, in that case, is well expressed in the syllabus:

"When one makes a written contract, intending to act therein as the agent of another, and to bind his principal, it is necessary that it should appear in the contract itself, that he acts as such agent."

"Oral testimony is not admissible to contradict, vary, or materially affect, by way of explanation, any written contract, whether within the Statute of Frauds or not, provided the contract is perfect within itself, and is capable of a clear and intelligible exposition, from the terms of which it is composed."

The same intelligible principle was also held in the subsequent case of Mayhew et al. *v.* Prince, 11 Mass. R., 53. In this case the bills of exchange were drawn by the defendant, on Higginson, Dodge & Co., a mercantile house of New York, of which Stephen Higginson, Jr., of Boston, was the principal partner, and the bills were payable to plaintiffs, or their order, and by the tenor of them, were to be placed to the debit of Stephen Higginson, Jr., when paid. It was fully proved, by parol, that defendant was acting as the agent of Stephen Higginson, Jr., and that plaintiffs knew that fact, at the time of taking the bills, but those facts were not permitted to vary the meaning of the parties, as expressed in the bills themselves, and the defendant was held " as the responsible drawer," because he put " his own name to them, without any qualification." And the circumstance that, in the body of the bills, the drawees were directed to charge the amount paid upon the bills to Stephen Higginson, Jr., was not sufficient to show, upon the face of them, that the defendant only acted as the agent of Stephen Higginson, Jr. So far as the bills, upon their face, went to show the relation ex-

isting between Prince and Higginson, they were indefinite and uncertain. It might well have been the fact that Higginson was indebted to Prince, and Higginson, Dodge & Co. to Higginson, and that, by mutual agreement, Prince was authorized to draw the bills, as a *mode* of payment. In such case, he would not be liable upon the bills, to repay the drawees, as the amount paid upon the bills was, by his express directions, to be charged to Higginson, and not to him. And Justice Parker, in delivering the opinion of the Court, very justly said :

" It seems to be a general principle that the signer of any contract, if he intends to prevent a resort to himself personally, should express in the contract the quality in which he acts."

The true result of these cases would then seem to be this : that the *capacity* in which the party acted in signing his name to an instrument, must appear alone upon the face of the instrument itself; and if not so apparent, he must be presumed to have acted in his own individual capacity, and be held responsible accordingly.

In the case of Pintz *v.* Stanton, 10 Wend., 271, it was held, as substantially stated in the syllabus of the case, that " a person may draw, accept, or endorse a bill by his agent, and it will be as obligatory upon him as though it was done by his own hand ; but the agent in such case must either *sign the name* of the principal to the bill, or it must appear on the *face of the bill itself,* in some way or other, that it was in fact done for him, or the principal will not be bound ; the particular form of the execution is not material, if it is substantially done in the name of the principal." And in the case of Evans and others *v.* Wells & Spring, 22 Wend., 325, it was held, that " if it can upon the whole instrument be collected that the true object and intent was to *bind the principal,* and *not merely the agent,* Courts of Justice will adopt that construction of it, however informally it may be expressed."

The principles laid down in these cases would seem to be entirely correct ; and when applied to the bill of exchange upon which this suit was brought, would seem to be decisive, *prima facie,* for the defendant. There are three circumstances that, combined, leave no doubt as to the expressed intention of Nichols, the defendant :

1. The bill is headed "Adams & Co.'s Express and Banking Office, Mormon Island."

2. The amount of the bill, when paid, was to be charged " to the account of this office."

3. The bill was signed by Nichols, as agent.

These circumstances being all stated upon the face of the bill, would seem ample to show the intention of the parties. I have not been able to find any adjudged case where all these circum-

stances concurred, and the agent yet held liable personally. The cases cited do not come up to the circumstances of this case.

In the case of Hills v. Bannister & Butler, 8 Carver, 31, a note signed by defendants, with the addition of "Trustees of Union Religious Society, Phelps," was held binding upon the defendants personally. To the same effect other cases will be found in Paley on Agency, page 381, note 7.

In the case of Snyder & Bone v. Hurd, 8 Texas Rep., 98, the suit was brought on the following instrument:

"$206 68.                    GALVESTON, Nov. 30th, 1849.

"Due Snyder & Bone, or order, by schooner Cornelius and owners, for supplies and materials received, the sum of two hundred and six dollars and sixty-eight cents, payable at Galveston, ten days after date.          WILLIAM HURD."

Upon which it was held: 1st. That the presumption was that Hurd was master of the vessel, and liable, as such, on the instrument; and 2d, That if he claimed to be merely an agent, he was still liable on the instrument, in the absence of proof of his authority to act in that capacity, and of the disclosure of such agency, at the time of the contract.

In the case of Mott v. Hicks, 1 Cowen, 513, the note was endorsed by the payer, in this way: "Israel Harsfield, agent:" and the endorser was held not liable, though it did not appear that he was, in fact, agent. The late case of Hicks v. Hinde, 9 Barbour S. C. R., 528, is a very important case, as most of the cases are therein reviewed, and the case of Hill v. Bannister, 8 Cowen, 31, was afterwards overruled by the case of Brockway v. Allen, 17 Wend., 41. In this case of Hicks v. Hinde, the authority of the case of Tafft v. Brewster, 9 John., 344, is shallow, and the decision of the Chancellor in Evans v. Wells, 22 Wend., 335, and of Mott v. Hicks, 1 Cowen, 513, confirmed. It was also held in the case of Hicks v. Hinde, that the drawer of a bill of exchange "may, like an endorser, add to his signature restrictive or qualifying words, to exempt himself from personal liability." "The acceptor of a bill of exchange, like the maker of a note, is considered as the original and principal debtor." In this case, the draft was drawn by Hinde, as agent, on L. T. Beardsley, and in favor of Hicks the plaintiff. Hinde signed the draft "John Hinde, agent." The plaintiff knew that Hinde had authority to draw the draft at the time it was made, and the Court decided that Hinde was not responsible, although the name of the principal was not upon the draft, but was otherwise known to the plaintiff. So in the case of Babcock and others v. Beaman, 1 Kirwan R., 200; the defendant, who was treasurer of a corporation, endorsed a note, the property of the corporation, in this form: "R. Beaman, Treasurer," and he was held not personally

35

liable. In the case of Mahar and others *v.* Overton, 9 Louis. Rep., 115, it was decided that in an action by the acceptors of a bill against the drawer, who directed it to be charged to account of the steamer Walter Scott, the agency of the drawer is apparent on the face of the bill, which negatives the idea that he was to be personally bound.

It would seem clear from these cases, that where the agent discloses the name of the principal, or that fact is otherwise known to the party receiving the bill, at the time the same is made, then the agent is not responsible, though the name of the principal be not stated on the face of the paper, and only the name of the agent be signed, with the term "agent" appended to it. And as to the question, whether plaintiff knew the fact that defendant only acted as agent of Adams & Co., the evidence seems ample, and the jury have so found.

But it is objected, on the part of the plaintiff, that the bill is signed by Corey for Nichols; and that, therefore, Adams & Co. would not be bound, as Nichols could not delegate his authority. 5 Pet., 389. "It is a general rule of law, that a delegated authority cannot be delegated." This rule is well expressed in the syllabus of the case of Commercial Bank of Erie *v.* Martin & Fox, 1 Hill, 501: "An agent cannot delegate any portion of his power requiring the exercise of *discretion* or *judgment;* otherwise, however, as to powers or duties merely *mechanical* in their nature. Hence, if empowered to bind his principal by an accommodation acceptance, he may direct another to write it, having first determined the propriety of the act himself; and it will bind the principal, though naming the delegate and not the agent, as the one exercising the power."

Now, whether the particular check in this case was executed by Corey for Nichols, in his presence and by his direction, may not have been sufficiently shown; but it was proven, that drafts drawn and signed in the same way had been paid by Adams & Co., and they thus confirmed the authority of Corey to sign the name of Nichols.

In any view I can take of the case, the decision of the District Court should be affirmed. I think the draft upon its face purports to be the draft of Adams & Co., and before Nichols could be made liable, it must be shown that he was guilty of deceit in drawing the draft without authority.

Judgment affirmed.