[Civil No. 4174. Filed December 23, 1940.]

[108 Pac. (2d) 573.]

A. J. KEEN and NINA I. KEEN, Husband and Wife, Doing Business Under the Name of KEEN'S FLOWER SHOP, Also Under the Name of KEEN'S NURSERY AND FLOWER SHOP, Also Under the Name of KEEN'S WESTWARD HO FLOWER SHOP, Appellants, v. JAMES R. CLARKSON, Appellee.

Mr. Henderson Stockton, Mr. Eli Gorodezky, Mr. S. N. Karam and Mr. J. W. Cherry, Jr., for Appellants.

Messrs. Cox & Hibbert and Mr. A. Y. Moore, for Appellee.

ROSS, C. J.—The defendants A. J. Keen and Nina I. Keen, the proprietors of flower shops located in Phoenix, Arizona, in response to an order from a customer in the town of Florence, Arizona, for flowers for a funeral, on June 23, 1938, sent their Dodge motor truck to deliver the desired floral pieces and on the return trip, at about 1:30 the following morning, some two miles north of Chandler on the Mesa-Chandler

highway, such truck collided with plaintiff Clarkson's convertible Ford coupe and injured plaintiff, for which he brought this action and recovered a verdict and judgment for $5,000. The defendants have appealed.

Max Lough was in charge of the truck on the trip and was its driver. There went along with him, with the defendants' knowledge and permission, his fiancee, Nita McElhaney (who later became his wife), and it was she who was driving when the injury to plaintiff occurred. It is claimed by defendants that Lough had no right to let or permit Nita to take the wheel and that they are not liable for any injury occurring to a third party while she was driving.

The ultimate facts, as shown by the evidence, are as follows: Nita McElhaney was a sister-in-law of Nina I. Keen's and had lived with the Keens for some eleven years. She assisted around the shops and did floral piece work. It is not shown that she was paid regular wages but she was given a home with the Keens and they gave her money when she needed it. Defendant A. J. Keen was asked whether she was in his employ and he said "Yes." Nina I. Keen said that Nita very often drove her personal car and delivered flowers and that she always helped around the shops when she could. Nita had driven automobiles for eleven years. Both the Keens testified that they had forbidden her to drive the truck and Lough said he had been instructed not to let anyone drive the truck on the trip. Lough's regular work was that of florist. The regular driver had been dispensed with on account of the slowness of business during the summer months and Lough was looking after the delivery of the Florence order.

Before leaving Florence for Phoenix, Lough and Nita had a Scotch whisky and soda. They then

drove to Coolidge where they had dinner and proceeded thence homeward along about 10 or 10:30 P. M. When about five miles south of Chandler, Lough grew tired and asked Nita to drive. She had driven some seven miles when they came upon plaintiff's car, virtually at a standstill, on the right side of the road near the edge of the pavement. Plaintiff was in his car at the wheel and his companion, Robert E. Harvey, according to plaintiff's testimony, was on the right side pushing on the right door to get the car off the road when defendants' car ran into them.

· According to defendants' testimony, when Nita saw plaintiff's car ahead of her, headed in the some direction, she applied the brakes, slowed down intending to pass on the left but Harvey at that instant stepped from behind plaintiff's car, which he was pushing, onto the highway in front of her and to avoid striking him she swerved to the right intending to pass on that side and in doing so hit plaintiff's car.

The complaint charged acts of negligence on the part of the defendants in driving at too great a speed, in failure to keep a lookout for traffic and for failure to apply the brakes quickly enough after the discovery of the plaintiff's automobile.

At the close of the evidence, the defendants moved for a directed verdict on the grounds that the driver of their truck at the time of the collision had no authority to drive it; that she was not their agent or servant; that she was not in the discharge of any duty she had been employed to perform, and that Lough, the driver of the truck, had been instructed not to let anyone drive it. The denial of this request by the court is assigned as error.

█ The question has not been before us until now but it is not new in other jurisdictions. We have, when the question of the liability of the owner of an automobile for damages due to its negligent operation

has arisen, insisted that the person at the time in charge of the automobile should be the agent or servant of the owner, using the car in his employer's business and not for the driver's business or pleasure. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Johnston* v. *Hare,* 30 Ariz. 253, 246 Pac. 546; *Peters* v. *Pima Mercantile Co.,* 42 Ariz. 454, 27 Pac. (2d) 143.

In this case there was no departure from the employers' business. The return trip from Florence would have been along the same highway if the driver had been Lough instead of Nita. In other words, the instrumentality was being used at the time in the business of the employers and as it was intended it should be used. The trip home was as much in the line of duty as the outward trip. The driver at the time of the accident, although an employee of defendants, was not employed to drive the truck. Her duties, it seems, consisted in helping around the flower shops, doing in that connection whatever was necessary, including the delivery of flowers to customers in defendant Nina I. Keen's personal automobile. She was not an inexperienced driver for she had been driving automobiles for eleven years. This young woman, an employee of defendants and an experienced driver, was expressly given permission by her employers to make the trip with Lough, to whom she was then engaged to be married.

■■ There is conflict in the cases as to the liability of the owner of an automobile for damages for injuries resulting from its negligent operation by one permitted by the owner's employee to drive it. In emergent circumstances such permission is allowable. A. L. I., Restatement, 1 Agency, §§ 79 and 241. Lough was tired and asked Nita to relieve him at the wheel. It is very improbable that this condition was an emergent one. At least it is not shown to be by the evi-

dence, and the liability cannot be sustained on that theory.

▮▮ The general rule is that the owner is not liable for injuries negligently inflicted by a stranger to the employer temporarily permitted to drive by his employee. This rule has its qualifications, recognized by many courts and we would say by a majority of the cases; it is that if the driving, by the person selected by the employee intrusted with the automobile, is done in the presence of the employee the actor is considered as the *alter ego* of the employee and his acts are the acts of the employee, for which the employer is liable. 5 Am. Jur. 721, sec. 383, and cases cited. This rule is stated as the subject for annotation in 44 A. L. R. 1379 (*Thixton* v. *Palmer,* 210 Ky. 838, 276 S. W. 971) as follows:

"1. The owner of an automobile who permits his son to take it for a pleasure trip is liable for injuries caused by the negligent driving of a third person whom the son permits to operate the car while remaining in it himself, if the owner would have been liable had the son himself been driving at the time of the accident."

The court in that case states that many of the cases are rested upon an opinion by Lord Abinger, C. B., in *Booth* v. *Mister,* 7 Car. & P. 66, in which the facts were that the driver of a cart permitted a stranger, with whom he was driving at the time of the accident, to take the reins. . Against the contention that defendant's servant was not driving at the time and that hence there was no liability, Lord Abinger said:

"As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

The facts in the Thixton case were that the owner of the car had intrusted it to her son, who, in turn, had

intrusted it to a friend, who, while driving negligently, injured the plaintiff. The son was present in the car at the time. The court adopted the rule as stated in Lord Abinger and cited several cases from different jurisdictions adhering to the same rule. We quote from only one of such cases (*Kayser* v. *Van Nest,* 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970), as follows:

"The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purpose for which she had taken it out."

This rule of constructive identity between the driver and the person he has asked to drive for him, while he rides beside or with him in the automobile, was considered in *Grant* v. *Knepper,* 245 N. Y. 158, 156 N. E. 650, 54 A. L. R. 845. The facts as stated by CARDOZO, C. J., who wrote the opinion for the court, were:

"Defendant sent out his motor truck with a driver and a salesman to deliver merchandise. On the way back the salesman asked to be allowed to run the car, though he was without an operator's license. Permission being granted, he slipped into the seat behind the wheel while the driver stood upon the running board beside. After going about a mile and a half, the salesman ran the truck into a car which had been parked along the roadway. The truck, after striking and damaging the car, went on about 40 feet till it collided with a telephone pole, which it threw to the ground. The owner of the car sues the owner of the truck."

The gist of the decision in that case is contained in the annotator's headnote reading:

"1. The owner of an automobile is not relieved from liability for injury done by the car, the operation of which his employee has wrongfully delegated to another, so far as it is caused by negligence assignable to his employee, who remains upon the vehicle with

general power and authority of supervision and control.''

The same rule is followed by the Supreme Court of Canada in *Gillespie Grain Co.* v. *Kuproski* (reported in 1935 (Can.) S. C. R. 13), 98 A. L. R. 1035, the headnote by the annotator being:

''1. The owner of a truck may be liable for a collision occurring while it is being driven by one who had been permitted by his employee in charge of the truck to operate it, if the collision is attributable to the negligent failure of the employee, who sat on the seat with the driver, to keep a proper lookout and to see that the driver kept the truck on the proper side of the road, considering the rights of other traffic.''

These headnotes indicate sufficiently the facts to show the applicability of the rule to the facts of this case. The accident here, as alleged in the complaint, is attributed to negligence in driving too fast, failure to keep a lookout and failure to apply brakes quickly enough. It certainly was the duty of Lough, the authorized driver of the truck, to see that his substitute did not drive too fast or neglect to apply the brakes or to keep a lookout, and for his failure to do so his employers are liable.

In *Gates* v. *Daley,* 54 Cal. App. 654, 202 Pac. 467, the court states the facts as follows:

''The auto truck was the property of appellant, and the defendant George Edge was employed by him to drive it. In the regular course of his employment Edge went on a long trip with the vehicle, accompanied by his wife. At a point on the journey Edge became fatigued, and in order temporarily to rest himself, allowed Mrs. Edge to operate the truck. It was while she was at the wheel that the accident occurred out of which this litigation arises. Edge had no authority from appellant to engage a substitute or assistant to drive the truck.''

and held the owner was liable under the constructive identity rule as stated in *Geiss* v. *Twin City Taxicab Co.*, 120 Minn. 368, 139 N. W. 611, 45 L. R. A. (N. S.) 382.

In *Gibbons* v *Naritoka,* 102 Cal. App. 669, 283 Pac. 845, 847, it was held, where a driver procured an assistant to drive the automobile in the owner's business without the latter's authority and an accident occurred by reason of such assistant's negligence, and while the employee-driver was sitting beside him, the owner was liable to the person injured. The court said:

"The liability of the master has sometimes been denied upon the specific ground that the servant was not present at the time of the performance of the tortious acts complained of. *Blumenfeld* v. *Meyer-Schmid Grocer Co.*, 206 Mo. App. 509, 230 S. W. 132. These cases, however, do not involve the principle of the co-operating negligence of an employee who is personally present with knowledge of the tortious acts of his assistant and possessing the ability to restrain or regulate such acts. By the weight of authority and in accordance with good reason, a master is liable to a third person for the results of the negligent acts of a stranger whose services are procured without the master's authority by the servant to assist him within the scope of his employment, under his supervision and in his presence. . . . "

Under this rule it is said that the employer is not relieved from liability even though he had instructed the employee not to permit others to drive the car. 5 Am. Jur. 721, sec. 383. However that may be, we do not think the direction by the owners to Lough not to let anyone drive the truck should be construed against Nita's relieving him when he became tired but rather as a direction not to let anyone drive unless he was present, on watch and in control. It seems strange that such direction should have been given since Nita was a driver of eleven years' experience

and, according to the evidence, delivered from defendants' shops in Phoenix floral pieces to local customers, using the employers' personal automobile for that purpose. Her disregard of the orders of the owners of the truck, not to drive it, may have constituted a breach of her duty to them but it could in no way affect their liability for its negligent operation by her.

The jury, taking into consideration that Nita was an experienced driver, that she was an employee around the floral shops of defendants, doing whatever she found to be done, including the driving of automobile to deliver flowers to customers, might have concluded that no such instructions were given but that she, like Lough, on the trip to Florence was engaged in the performance of work within the scope of her employment. We think the circumstances presented a question of fact for the jury.

It is next contended the verdict was excessive and that it was rendered under the influence of prejudice and passion. The only reason for assigning this mental attitude to the jury, apparently, is the size of the verdict. We do not think that that in itself is sufficient evidence of prejudice and passion on the part of the jury rendering the verdict. The question of the amount of damages a person who has been wrongfully injured should receive for his injury is a very perplexing and bothersome one in most tort cases. We have read the evidence concerning plaintiff's health and physical condition, as observed by his neighbors and acquaintances before he was injured as compared with his health and physical condition after the injury; also his own testimony in that regard, and the testimony of the doctors as to the character of his injuries. The experts, as usual, did not agree. Those testifying for plaintiff state that his injuries in his hips and lower lumbar region were serious and permanent. If this

testimony and that of plaintiff's neighbors and ac-
quaintances as to his condition before and after the
injury are believed, the verdict of $5,000 cannot be
considered too much. The expert testimony in behalf
of defendants was that plaintiff's injuries were more
or less superficial and temporary and that subjectively
no injury of a permanent character was discovered.
If this evidence is to be believed, the verdict was way
too much. It was not for the trial court nor is it our
province to weigh this evidence and determine what
amount of money will compensate plaintiff for his in-
juries. It was a matter for the jury. On a motion
for a new trial, the trial court evidently was satisfied
that the verdict was not excessive since such motion
was overruled. Under the conditions appearing, we
do not feel that we should disturb the verdict on ac-
count of its size.

The court refused to give the following in-
struction, requested by defendants:

"In this case, gentlemen, I charge you that under
the law, if Harvey was negligent, his negligence is
chargeable to Clarkson. The negligence of either
Clarkson or Harvey renders both responsible there-
for."

The ruling is assigned as error because, it is said,
Harvey and Clarkson were engaged in a joint enter-
prise or venture and negligence of either is imputable
to the other. The instruction requested refers to any
negligence, whether contributory, proximate or re-
mote, whether occurring at the time of the accident or
before or after. A party's negligence is no element
unless in some way it contributed to the accident, and
the requested instruction omits to indicate that it
should or must contribute to the accident. Whether
the relation of Clarkson and Harvey was such that
negligence of Harvey was imputable to Clarkson, it
is not necessary to decide. At all events, if he was

negligent, his negligence must have contributed to the accident in order to be material to the case, and the instruction should have so stated.

The defendants complain of the court's refusal to give their requested instruction on the last fair chance. We think the ruling was right because it omitted the condition that the danger then confronting defendants was not the result of their own negligent fast driving, or failure to keep a lookout, or to apply the brakes in time, and it also told the jury that if Harvey's negligence was the cause of the collision, then their verdict should be for defendants. In other words, Clarkson, although free from negligence, could not recover for his injury. The court gave an instruction on the last fair chance which we think conforms with the law and the evidence in the case.

Defendants complain of ten other of the court's rulings refusing as many requested instructions but such requests were either covered by the instructions given or were incorrect and were properly refused.

The instruction, informing the jury as to what the statutory rule is governing the driver of a motor vehicle in passing other drivers going in the same direction, is excepted to because it failed to take into account the asserted emergency at the time of the collision.

The same exception is taken to the instruction on the duty of a driver of a motor vehicle on the public highway at night to keep control of such vehicle so as to be able to halt within the range of his vision. We think the general instruction on the asserted emergency was sufficient and that it was not necessary that it be repeated.

Defendants claim the instruction on the measure of damages was erroneous in that the jurors were

told that they might consider, among other things, "the loss of earnings from his (the plaintiff's) labor since he received said injuries, if any," as there was no evidence of any such loss. If there was no evidence that the plaintiff, from the time of his injury up to the time of the trial, had sustained a loss of earnings, we will assume the jury included none in its verdict, that being its instruction.

■■■ Doctor Coit I. Hughes was a witness for the plaintiff. He testified that he attended to plaintiff's injuries and told what they were, how often he treated them, and by what means. He was asked by counsel for defendants if he kept books and records in connection with his treatment of the plaintiff, and he answered that he did, whereupon the court excused him from the witness stand and directed him to bring his books for use in the case. He did not bring his books and records, if he had any, but brought a memorandum made, as he said, from his books and records by a clerk in his office. The court, instead of ordering him to produce the originals as it should have done, allowed him to use the memorandum. Complaint is made of this failure of the court to do its duty, and rightly so, but it is not apparent that this failure of duty in any way affected the results of the trial. All we can do is to recite the facts and express the hope it will not occur again.

The judgment of the lower court is affirmed.

LOCKWOOD and McALISTER, JJ., concur.