**UNITED STATES of America**

v.

**James Daniel McGOVERN, John Thomas Scull.**

**Crim. No. 80–168–Erie.**

United States District Court,
W. D. Pennsylvania.

Jan. 22, 1981.

Robert J. Cindrich, U. S. Atty., John P. Garhart, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Robert L. Lackey, Asst. Federal Public Defender, Pittsburgh, Pa., for McGovern.

Philip B. Friedman, Erie, Pa., for Scull.

OPINION

WEBER, Chief Judge.

The defendants here are charged with violation of the federal statute covering the interstate transportation of forged travelers' checks, with unlawful or fraudulent intent, under 18 U.S.C. § 2314 par. four. Only the element of forgery is at issue here.

Neither the ingenuity of counsel nor the laborious plowing of the court has discovered a similar scheme in the reported cases. The court cannot comprehend the actions of the defendants in crossing a state line as being done deliberately as part of a scheme to establish a defense to federal prosecution but that suggestion now faces us. The same acts if done within a single state would subject defendants to a variety of state charges. Nor, as shown by the conclusion we reach here, can we accept the suggestion that no federal prosecutor would pursue an action for violation of the federal travelers' check statute under the facts set forth herein.

The matter was heard by the court without jury upon the waiver of jury trial made by the defendants in open court. From the evidence the court makes the following:

*Findings of Fact*

1. In August of 1978 defendant McGovern owed money to defendant Scull.

2. In order to repay the debt defendants McGovern and Scull devised a scheme to obtain funds through a transfer of travelers' checks.

3. Under the scheme Scull provided McGovern with cash in the amount of $2424.00 to purchase $2400.00 in travelers' checks issued to McGovern.

4. On August 30, 1978 twenty four travelers' checks in the amount of $100.00 each were issued by a branch of Citibank in Niagara Falls, New York to James McGovern who signed each of the checks in the upper right hand corner. These are the checks described in the indictment.

5. At the time of the issue of the checks to defendant McGovern, defendant Scull practised imitating McGovern's signature.

6. On the same day, August 30, 1978, defendants McGovern and Scull traveled together from Niagara Falls, New York to Erie, Pennsylvania.

7. In Erie, Pennsylvania on August 30, 1978, defendant McGovern gave defendant Scull McGovern's driver's license so that Scull could identify himself as McGovern.

8. On August 30, 1978 defendant Scull entered two banks in Erie, Pennsylvania, identified himself as McGovern with the aid of McGovern's driver's license, presented the travelers' checks for cashing, signed McGovern's signature on each check in the space provided for countersignature and received $2400 in cash. Scull was identified by one teller and his fingerprints appeared on various of the travelers' checks cashed at both the banks.

9. All the acts performed by defendant Scull were done with the knowledge, consent and assistance of defendant McGovern.

10. The 24 travelers' checks which were cashed in Erie, Pennsylvania banks were forwarded through banking channels to New York, N. Y. for ultimate collection.

11. After cashing the checks both defendants returned to the state of New York.

12. On August 31, 1978, defendant McGovern filed a report with local police in New York state saying that the checks had been stolen from his automobile at the Buffalo, N. Y. airport on August 30, 1978.

13. On September 1, 1978, defendant McGovern reported to a branch of Citibank in Amherst, N. Y. that the travelers' checks had been stolen from his auto at the Buffalo, N. Y. airport on August 30, 1978 and that the theft had been reported to the police.

14. On September 1, 1978, Citibank issued $2400 worth of replacement travelers' checks to defendant McGovern at his request based on his theft report.

15. On February 23, 1979, after being advised of his rights, defendant McGovern admitted the above facts to an agent of the F.B.I.

DISCUSSION

The defendants here were charged in the indictment under paragraph four of 18 U.S.C. § 2314, which defines as an offense:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any travelers' checks bearing a forged countersignature . . .

18 U.S.C. § 2314 was amended in 1968 by the addition of the above paragraph four to cover a situation where judicial construction excluded from the other provisions of Section 2314 a validly executed instrument bearing a forged countersignature. *Streett v. U. S.,* 331 F.2d 151 (8th Cir. 1964).

The legislative history of paragraph four shows that it was intended to cover only those instruments commonly known as travelers' checks. U.S.Code Congressional and Administrative News, pp. 3654–55, 3656–57 (1968).

A number of cases have been cited to us which were decided prior to the 1968 amendment and are mostly of limited value because they were brought under paragraph three of Section 2314 which includes in the offense the words "falsely made, forged, altered, or counterfeited securities". A distinction is now drawn between the forgery requirement at paragraph four and the falsely made requirement of paragraph three at § 2314. *U. S. v. Huntley,* 535 F.2d 1400 (5th Cir. 1976).

Thus, we are limited to the question of whether the signature described in the findings of fact constitutes a "forgery" under paragraph four of Section 2314.

In *Gilbert v. U. S.,* 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962) it was held that the crime of forgery is defined by the common law as it existed in 1823.

Forgery is not defined in the statute. Forgery is generally defined as 'the false making or materially altering, with intent to defraud, of any writing, which, if

genuine, might be of legal efficacy, or the foundation of legal liability.' 37 C.J.S. Forgery § 1. . . . . . . It has been held that 'forged' and 'falsely made' as used in the statute are 'homogenous, partaking of each other . . . . synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement'. *Marteney v. United States,* 216 F.2d 760, 763 (10th Cir. 1954). *Edge v. U. S.,* 270 F.2d 837 (5th Cir. 1959).

A series of cases cited by defendants stem from *U. S. v. Sonnenberg,* 158 F.2d 911 (3rd Cir. 1946), in which the defendants were charged with forgery under 18 U.S.C. § 73. The essential question in that case was the existence of authority to sign another's name. The court, finding such authority, and further finding no evidence of intent to defraud, reversed the conviction.

The cases cited by the defendants all rely on the principal set forth in *Sonnenberg.* All have as their essential question the existence of authority, express authority or implied authority, to sign another's name to a document, and the adequacy of the charge given to the jury on the question of authority. See, *United States v. Gilbreath,* 452 F.2d 992 (5th Cir. 1971); *United States v. Lewis,* 592 F.2d 1282 (5th Cir. 1979).

However, in the present case we are not dealing with the question of the authority of Scull to sign McGovern's name to the travelers' checks. Both defendants insist that such authority was given and that therefore there can be no forgery. However, the very authority given was part of the scheme to defraud.

If this claimed authority were valid and legal there would be no need for Scull to practice making an imitation of McGovern's signature, or to make the false representation to the payee of the travelers check by presentation of McGovern's driver's license that he was in fact McGovern.

Aside from the cases dealing with the existence of authority we find no cases on the exact point of whether the countersignature of the drawer's name made with the consent of the drawer at the time but with the specific knowledge that that consent would be repudiated as part of a scheme to defraud, constitutes forgery as defined in the statute. Under the evidence in this case the intent to defraud is not contested.

Perhaps the closest analogy to the present case is *United States v. Wilkins,* 213 F.Supp. 332 (S.D.N.Y.1963), *aff'd per curiam,* 328 F.2d 120 (2d Cir. 1964). In *Wilkins* it was argued that there was no forgery because the person cashing the check knew that the person endorsing the check with the name of the payee was not the named payee, but took the check upon the oral representation that the endorser had authority to sign the payee's name on the payee's behalf. After an extensive review of the common law precedents, Judge Bryan concluded that:

> The emphasis on the instrument itself which is of ancient origin (See *Rex v. Jones and Palmer,* 1 Leach 366, 168 Eng. Rep. 285 (1785)) is pointed up by what appears to have been the reasons for declaring forgery to be a crime in the first place—the need to protect seal and signature so as to safeguard the holder, and the commercial necessity for making the negotiability of instruments feasible as a practical matter.
>
> *Id.* at 338.

The court concluded that the oral representations of authority were wholly irrelevant. The signature was placed on the instrument to make it appear that it was a valid and genuine instrument capable of negotiation and requiring ultimate payment by the drawee, when in fact it was not. "I see nothing in the common law which brings this case within the category of 'per procuration' or agency endorsements without authority held not to be a forgery in such cases as *Gilbert (v. United States,* 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962)); *Selvidge (v. United States,* 290 F.2d 894 (10th Cir. 1961)); and *Regina v. White* (2 Car. & K. 404, 175 Eng.Rep. 167, (1847))." *Id.* at 338.

Therefore the countersignature of McGovern's name, although made with his knowl-

edge and consent, was made to give the instrument the appearance of regularity and validity. This is fortified by the attempt to imitate McGovern's handwriting. The signature was false in that the person signing was not in fact McGovern. It was done so that the instrument would appear to be of legal efficacy so that payment thereof could be made on presentation but with the intention of defrauding the ultimate drawee by a denial of its genuineness.

The signing of the drawer's countersignature by another was obviously material to the scheme to defraud.

## CONCLUSIONS OF LAW

1. The writing made by defendant John Thomas Scull of the words "James D. McGovern" on the space provided for countersignature on the travelers' checks described in the indictment was not made by the person whose signature it was represented to be, and it was made with the intention of deceiving any person dealing with the documents that the instrument was valid, and was made with the knowledge that the validity of the writing as the signature of James D. McGovern and the authority to write such signature would be denied. The travelers' checks as described in the indictment were therefore forged.

2. The forgery of the travelers' checks described in the indictment was done with unlawful or fraudulent intent to aid defendants in carrying out a scheme to defraud the drawee and to obtain money to which they were not entitled.

3. By cashing the forged travelers' checks in Pennsylvania, the defendants caused forged travelers' checks, after the forgery, to be transported in interstate commerce from Pennsylvania to New York in order to effect payment of them by the drawee.

4. The actions described in the findings of fact herein constitute a violation of the provisions of paragraph four of 18 U.S.C. § 2314.

5. Defendant James Daniel McGovern is adjudged guilty of Count 1 of the indictment.

6. Defendant John Thomas Scull is adjudged guilty of Count 1 of the indictment.

7. Counts 2 through 24 of the indictment are dismissed as multiplicious.