661 F.2d 27
 UNITED STATES of America
v.
McGOVERN, James Daniel a/k/a James D. Perino Scull, John Thomas.
Appeal of James Daniel McGOVERN.
UNITED STATES of America
v.
McGOVERN, James Daniel a/k/a James D. Perino Scull, John Thomas.
Appeal of John Thomas SCULL.
 Nos. 81-1606, 81-1607.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Sept. 24, 1981.
Decided Oct. 5, 1981.
 
 George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for appellant James Daniel McGovern.
 Philip B. Friedman, Erie, Pa., for appellant John Thomas Scull.
 Robert J. Cindrich, U. S. Atty., Paul J. Brysh, Asst. U. S. Atty., Daniel Stolzer, Legal Intern, Pittsburgh, Pa., for appellee.
 Before ALDISERT, HIGGINBOTHAM, and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The question for decision is whether the appellants' conduct constituted a violation of paragraph four of 18 U.S.C. § 2314:
 
 
 2
 Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any traveler's checks bearing a forged countersignature ... shall be fined ... or imprisoned ... or both.
 
 
 3
 Convicted in a bench trial, McGovern and Scull argue in this appeal that the government failed to prove the predicate of the federal statutory offense: common law forgery. Appellants contend that the existence of authority to sign another's name to an instrument defeats a forgery charge, and that here appellant McGovern, purchaser of the traveler's checks, authorized appellant Scull to sign McGovern's name to the checks. We will affirm essentially for the reasons set forth by Chief Judge Weber. United States v. McGovern, 505 F.Supp. 195 (W.D.Pa.1981).
 
 I.
 
 4
 In the modern idiom, the appellants' fascinating plan could be dubbed "CITISCAM," because the participants devised a novel method of defrauding Citibank Corporation and certain businesses. The motive for the operation was the existence of an $1,800 debt McGovern owed an increasingly impatient Scull. The scheme was obvious: McGovern would buy $2,400 (for good measure) in traveler's checks from a bank; Scull would sign McGovern's name to the checks and cash them and McGovern would claim to the bank that he had lost the checks, knowing that according to highly advertised traveler's check policy the issuer would promptly "refund" his "lost" checks. If the scheme was successful, either the businesses or the issuer of the checks would bear the loss.
 
 
 5
 Citibank, one of the planned victims under the scheme, issued the checks to McGovern through a Niagara Falls, New York, bank. The purchase agreement that McGovern signed stated:
 
 
 6
 The purchaser agrees to sign each check in the upper left corner at the time of purchase with the same signature used in signing this agreement; and to counter-sign each check in the lower left corner when cashed, in the presence of the person cashing it.
 
 
 7
 Not attuned to the consequences of crossing state lines, McGovern then proceeded to Erie, Pennsylvania, thereby vesting the federal authorities with jurisdiction over the conspirators' activities. There, tutored by McGovern, Scull practiced imitating McGovern's signature, and then, armed with his co-conspirator's driver's license as identification, Scull entered two Erie banks and a GTE store where he cashed the checks and collected $2,400. Playing out the scenario, McGovern then reported to the New York police that his checks had been stolen from his automobile while in Buffalo; one day later he reported the loss to Citibank and, not surprisingly, Citibank issued McGovern $2,400 in replacement checks.
 
 II.
 
 8
 As explained in detail by Chief Judge Weber, forgery in § 2314 means what the term meant under common law in 1823. United States v. McGovern, 505 F.Supp. 195, 196-97 (W.D.Pa.1981) (citing Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962)). Common law forgery has three elements: (a) The false making or material alteration (b) with intent to defraud (c) of a writing which, if genuine, might be of legal efficacy. 505 F.Supp. at 196.
 
 
 9
 McGovern and Scull contend that under the facts, the first element cannot be established. They rely on the common law precept that authority to sign another's name to a written instrument negates a charge of forgery regardless of fraud or falsehood in the transaction. Whatever validity this argument may have in other contexts, e. g., see United States v. Sonnenberg, 158 F.2d 911 (3d Cir. 1946) (implied authority to endorse war bonds); Oquendo v. Federal Reserve Bank, 98 F.2d 708 (2d Cir.), cert. denied, 305 U.S. 656, 59 S.Ct. 251, 83 L.Ed. 425 (1938) (fraudulently induced authority to sign check); see also United States v. Carney, 328 F.Supp. 960 (D.Del.1971), aff'd per curiam, 455 F.2d 925 (3d Cir. 1972); Russell v. Second National Bank, 136 N.J.L. 270, 55 A.2d 211 (1947), we do not believe that those cases control a traveler's check transaction.
 
 
 10
 The purchaser's agreement to sign each traveler's check at the time of purchase and to counter-sign the checks only in the presence of the person cashing them, in our view, invalidates his attempt to authorize another to sign his name. As the fifth circuit observed in Berry v. United States, 271 F.2d 775, 777 (5th Cir. 1959), cert. denied, 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555 (1960), traveler's checks are unique. Unlike other negotiable instruments, they are cashed not on the credit of the negotiator, but on the credit of the issuer together with the conformity of the negotiator's signature with that on the face of the instrument. These instruments are negotiated freely because of the assured credit of the check issuer and relative ease of determining signature validity. The traveler's check contract clearly denies the purchaser the right to authorize another to sign for him and the reason seems clear: a representative signature complicates the negotiation process and thereby dilutes the advantage of ready acceptance. Without authority to delegate the check-cashing power to another, a purported delegation is of no effect under the law of agency. See Restatement (Second) of Agency § 19; see also United States v. Anderson, 527 F.2d 442, 444 (5th Cir. 1976) (per curiam). Thus, the decisions holding that authority to sign another's name negates a charge of "false making" are a fortiori inapplicable to this case.
 
 
 11
 Moreover, under the facts presented here, the businesses cashing the checks were deliberately deceived into believing that the person signing the checks was the purchaser. They, as much as Citibank, were defrauded in the transaction because Scull was impersonating McGovern. This case, therefore, differs from cases in which the person accepting the instrument was informed of the purported authorization. If the authorization was valid, there would be no forgery and no defrauding of the cashing person. See United States v. Wilkins, 213 F.Supp. 332 (S.D.N.Y.1963), aff'd per curiam, 328 F.2d 120 (2d Cir. 1964). Of course, a person who cashes a traveler's check in those circumstances is on notice that the issuer of the check may refuse to honor the instrument because of an invalid signature. But the knowledge of the cashing person that the person signing is acting in a representative capacity negates a charge of forgery. When the person signing the traveler's checks is an imposter, however, his unauthorized signature on a traveler's check, when accompanied by an intent to defraud, constitutes common law forgery.
 
 
 12
 McGovern, the purchaser of the traveler's checks, knew the effect his actions would have on Citibank and on the business cashing them indeed, appellants conceded that this was the sole purpose of having Scull sign the checks. Scull was an imposter and possessed no authority to sign the checks because McGovern could not grant him this authority. When coupled with the appellants' intent to defraud, the unauthorized signature on the otherwise legally sufficient instruments constituted common law forgery.[1] The elements of the offense having been established we conclude that the convictions must stand.
 
 III.
 
 13
 Accordingly, for the foregoing reasons and as more elaborately set forth by the district court, the judgment of the district court will be affirmed.
 
 
 
 [1]
 We also reject appellants' argument that finding their conduct to be proscribed by 18 U.S.C. § 2314 violates their rights to due process and equal protection. See generally Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) (per curiam); United States v. Mazurie, 419 U.S. 544, 553, 95 S.Ct. 710, 715, 42 L.Ed.2d 706 (1975)