**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roman MENDOZA–ACUNA, Defendant,**

**and**

**International Fidelity Insurance
Company, Appellant.**

**No. 84–1313.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1985.

Decided June 27, 1985.

---

James E. Mueller, Tucson, Ariz., for plaintiff-appellee.

Robert A. Kerry, Kerry, Schocket & Dusenberry, Tucson, Ariz., for appellant.

Before MERRILL, WALLACE and POOLE, Circuit Judges.

MERRILL, Circuit Judge:

International Fidelity Insurance (IFI) appeals pursuant to 28 U.S.C. § 1291 from a judgment of the district court holding IFI liable as a surety on a dishonored appearance bond.

## I

In September 1982, Donald Murphy and Kenneth Chambers were employees of Central Surety Associates (CSA). Chambers and Murphy had also been appointed lawful agents and attorneys-in-fact by IFI. IFI had limited Murphy's authority to posting bonds of not more than $25,000. Chambers had been granted authority to post bonds up to $100,000.

On September 1, 1982, Roman Mendoza-Acuna was released from custody in Tucson, Arizona after a $50,000 appearance bond was posted on his behalf in the names of IFI and CSA. Murphy posted the bond and an accompanying power of attorney by signing the name of Chambers. The bond was posted at the United States Magistrate's Office in Tucson. Murphy did not inform the magistrate's clerk that he had signed the documents in Chambers' name or that he was not, in fact, Kenneth Chambers. The clerk did not ask for identification from Murphy, but she did ascertain that the signature on the bond corresponded with the name on Chambers' qualifying power of attorney which had been filed with the district court.

The defendant then signed the bond before the magistrate, and the magistrate acknowledged that the bond had been signed and acknowledged before him. The magistrate then approved the bond.

After Mendoza-Acuna failed to appear for trial, the district court ordered the bond forfeited. The government filed a motion for judgment of default on the bond against IFI. IFI opposed on the ground that it had not authorized the signing of the bond. The court decided that the government was entitled to judgment in its favor, finding that IFI appointed Chambers as its agent and attorney-in-fact to post bail bonds in amounts up to $100,000 in state and federal courts and that Chambers authorized Murphy to sign the power-of-attorney in Chambers' name and to post the bond with the court.

The finding that Murphy was Chambers' authorized agent was disputed by IFI. The court, however, credited Murphy's testimony that he had authorization from Chambers and rejected Chambers' contradictory testimony as not credible. Because Chambers was located in Phoenix and Murphy in Tucson, the posting of any bond in Tucson in excess of $25,000 (the limit of Murphy's direct authority from IFI) would be accomplished by Chambers sending the bond and power-of-attorney unsigned to Murphy in Tucson and Murphy then signing Chambers' name.

Finally, the district court found that the procedure followed by the Magistrate's Office in accepting the bond did not relieve IFI of liability.[1]

1. Before the district court, IFI claimed that it was relieved from liability by the magistrate's failure to follow proper procedures in permitting the bond to be posted. On appeal, this argument is not advanced, but appellant does refer to the magistrate's "violation of law" in acknowledging the signatures on the bond. The magistrate did not act illegally when he approved the bond after having determined that Mendoza-Acuna had signed, but without having determined that Chambers had actually signed or that Murphy had authority to sign. Where,

## II

The authority of the United States to enter into a bail bond arrangement is founded upon the Constitution and statutes of the United States and is in no way dependent upon the laws of any state. *See, e.g.,* U.S. Const. amend. VIII; 18 U.S.C. § 3141 *et seq.;* Fed.R.Crim.P. 46. The authority of the United States in this case is, therefore, closely analogous to the authority of the United States in the administration of other national federal programs, and questions involving the rights of the United States are controlled by federal law. *See United States v. Kimbell Foods, Inc.* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–575, 87 L.Ed. 838 (1943).

In the absence of congressional action, federal law is sometimes given content by borrowing from state law. *See United States v. Yazell,* 382 U.S. 341, 352–58, 86 S.Ct. 500, 506–510, 15 L.Ed.2d 404 (1966). *Cf. United States v. Standard Oil Co. of California,* 332 U.S. 301, 308, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947) (applying federal common law rather than state law to government's subrogation rights). The choice of law issue is not, however, that posed in a diversity case, where, in the absence of applicable state law, a federal court is required to predict what the state supreme court would decide. *See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 434–35 (9th Cir.1978). If no Arizona law exists relevant to the issue before the court, then federal law will be given content by looking beyond the laws of Arizona.

Here we are not concerned with Murphy's authority, whether "actual" or "apparent" to post bonds on behalf of IFI, because he signed the name of Chambers to the bond.[2] Further, we do not regard Murphy's authority from Chambers as being in issue. The district court found that Chambers had expressly given Murphy authority to sign Chambers' name, and this finding was not clearly erroneous.[3] The issue presented, therefore, is whether Chambers possessed authority from IFI to delegate the signing of the bond to Murphy.

We do not regard that issue as one of ostensible or apparent authority. The record does not suggest that IFI led anyone to believe that Chambers had any greater authority in that respect than would be possessed by any agent under similar circumstances. The question, rather, is whether Chambers' power to grant authority to Murphy to sign his name was inherent in the grant of Chambers' agency from IFI.[4] We have not been referred to any Arizona law on this issue.[5]

---

as here, the sureties are corporations, the magistrate is not required to examine the *bona fides* of the person signing for the surety. Only where the surety is an individual must the surety justify before the magistrate and the magistrate endorse that justification on the bond. United States District Court for the District of Arizona, Rule 81. *See* Fed.R.Crim.P. 46(d).

2. This case is, therefore, distinguishable from *Keen v. Clarkson,* 56 Ariz. 437, 108 P.2d 573 (1940), in which the Arizona Supreme Court held that a jury could reasonably have concluded that the actor "was engaged in the performance of work within the scope of her employment." *Id.* at 447, 108 P.2d at 577. We also do not consider relevant to the facts before us the dicta in *Keen* regarding "emergent circumstances", *see id.* at 442, 108 P.2d at 575, and a master's liability for the acts of a third party performed in the *presence* of a servant. *See id.* at 445–46, 108 P.2d at 576–77.

3. The oral delegation of authority from Chambers to Murphy is not an issue under either Arizona or federal law. Neither Arizona nor the United States are among the jurisdictions which have enacted "equal dignities" statutes denying recognition to any oral grant of agency authority to enter into a contract required by law to be in writing. *Compare* Cal.Civ.Code § 2309 (West 1954). In Arizona only agency agreements involving the lease or sale of real property or mines must be in writing. Ariz.Rev. Stat.Ann. § 44–101(6), (7) (1967).

4. In *Brutinel v. Nygren,* 17 Ariz. 491, 154 P. 1042 (1916), an agent appointed to sell a store hired a subagent as a broker. The court, however, reserved the issue of whether the agent had authority to hire a broker at all, and held that, whatever the authority of the agent to delegate the task of selling the store, the agent could not bind the principal to pay a commission to the subagent. *Id.* at 501–02, 154 P. at 1046.

5. This court has stated, without analysis, that the application of a bail bond depends upon the

## III

■ It is recognized that, "an agent cannot properly delegate to another the exercise of discretion in the use of a power held for the benefit of a principal." Restatement (Second) of Agency § 18 (1958). Where discretion is not delegated, however, there is little cause for concern. As the Restatement provides, "authority to conduct a transaction ... includes authority to delegate to a subagent the performance of incidental mechanical and ministerial acts." Restatement (Second) of Agency § 78. *See Shreveport Engraving Co. v. United States,* 143 F.2d 222, 227 (5th Cir.), *cert. denied,* 323 U.S. 749, 65 S.Ct. 82, 89 L.Ed. 600 (1944); *Freeport Ridge Estates, Ltd. v. Reckner,* 266 So.2d 129, 131 (Fla.Dist.Ct. App.1972) (per curiam) (showing land to prospective buyers is ministerial and delegable act); *Jackson v. Fort Pitt Hotel, Inc.,* 162 Pa.Super. 271, 273–74, 57 A.2d 696, 698 (1948) (making a bailment contract for a parked car is ministerial and delegable act).

■ An agent who has decided whether to post a bond has availed his principal of the requisite degree of discretion and judgment. Among the ministerial acts which may be delegated by an agent are the execution and signature of notes and documents binding the principal where the agent has determined the propriety of the act. *See Sayre v. Nichols,* 7 Cal. 535, 542 (Cal.Sup.Ct.1857); *Murphy v. Munson,* 95 Cal.App.2d 306, 312, 212 P.2d 603, 606 (1949); *Kadota Fig Association of Produc-*

*ers v. Case-Swayne Co.,* 73 Cal.App.2d 815, 820, 167 P.2d 523, 526 (1946) (agent for surety company passed upon a bond, but, having inadvertently failed to sign it, directed a subagent by telephone to sign the agent's name); *General Motors Acceptance Corp. v. Anacone,* 160 Me. 53, 65, 197 A.2d 506, 513 (1964); *Altermatt v. Rocky Mountain Fire Insurance Co.,* 85 Mont. 419, 423–24, 279 P. 243, 244 (1929); Restatement (Second) of Agency § 78 illustration 1 ("P authorizes A to accept bills for him. A bill drawn by T comes to A's hands and A directs B to write P's acceptance upon the bill. A is authorized to do this and B is authorized to sign the bill."); *id.* illustration 5.

■ The rule that an agent may direct a subagent to sign a document in the agent's name once the decision to execute the document has been made by the agent is also part of the federal common law. "[A]n instrument executed not by the agent but by a subordinate appointed by him to do so will bind the principal if the propriety of such execution has been determined by the agent himself." *Shreveport Engineering,* 143 F.2d at 227. In this case, Chambers was found to have discussed the bond with Murphy, to have sent the bond and power-of-attorney unsigned to Murphy in Tucson, and to have authorized Murphy to sign the power of attorney for him and to post the bond with the court. These findings demonstrate that the decision to post the bond was made by Chambers and that Murphy was no more than an amanuensis. A chain of authority there-

"'applicable state law.'" *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir.1969), *quoting Heine v. United States,* 135 F.2d 914, 917 (6th Cir.1943). *Gonware* relied, however, upon *Heine* and other cases which interpreted the Act of Sept. 24, 1789, ch. 20, § 33, 1 Stat. 91 (formerly codified at 18 U.S.C. § 591), a statute repealed in 1948, as mandating that state law govern in questions concerning bail. *See United States v. Carr,* 608 F.2d 886, 887–88 & n. 1. (1st Cir.1979), *United States v. Catino,* 562 F.2d 1, 2 (2d Cir.1977); *United States v. Miller,* 539 F.2d

445, 447 n. 2 (5th Cir.1976) (per curiam). *See also United States v. Vera-Estrada,* 577 F.2d 598, 599 n. 2 (9th Cir.1978) (characterizing *Gonware*'s statement that state law governs bail questions as dictum and noting that *Gonware* has been rejected by two other circuits). Since there is no applicable Arizona law and both the federal common law and general state law principles of agency reach the same result, we need not decide whether the *Gonware* dictum should be followed.

fore existed, and IFI may be held liable on the bond.[6]

Judgment affirmed.

---

6. IFI's argument that Chambers' delegation to Murphy was not expressly authorized is irrelevant given the inherent nature of the authority to delegate ministerial duties. No express limitation was placed on Chambers' authority to delegate the signing of his name. *Cf. United States v. McGovern,* 661 F.2d 27, 29 (3d Cir. 1981) (purchaser's agreement to sign each traveler's check at the time of purchase and to counter-sign the checks only in the presence of the person cashing them invalidated his attempt to authorize another to sign his name), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). The mere statement in Chambers' qualifying power-of-attorney that he was an agent with "limited authority" does not constitute an express limitation on his inherent authority to delegate ministerial matters.