**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas MILLER, Defendant,**

**Resolute Insurance Company, Defendant-Appellant.**

Nos. 75–1233, 75–1234.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1976.

Rehearing and Rehearing En Banc Denied Nov. 1, 1976.

Ralph H. Hicks, William D. Barwick, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, McCREE * and TJOFLAT, Circuit Judges.

PER CURIAM:

Resolute Insurance Company is surety for one Thomas Miller on two $10,000 appearance bonds.[1] Miller was tried and convicted for assaulting an FBI agent (the assault case) and later pleaded guilty to five of seven counts of interstate transportation of stolen property (the transportation case). He was sentenced to three months of imprisonment on the assault conviction and to three years for the interstate transportation of stolen property. The sentences were to be served consecutively, with the three years commencing at the termination of the three months. The trial court, however, at the request of Miller and in the absence of any agent of Resolute, allowed a brief stay prior to incarceration. The bond in the assault case was specifically continued during the stay. The judgment and commitment in that case ordered Miller to surrender to the United States Magistrate at the expiration of the stay between certain hours on a certain day, to abide by the judgment of the court. This Miller never did. In time the government moved to forfeit the two bonds, and eventually final judgments of forfeiture were entered. Resolute has appealed from these judgments claiming basically and for various reasons that it was exonerated from all liability once sentence was passed.

---

* Of the Sixth Circuit, sitting by designation.

1. The bonds are identical in their terms.

■ An appearance bond is nothing more than a contract between the government on one hand and a principal and his surety on the other. *United States v. Jackson,* 465 . F.2d 964 (10th Cir. 1972). The extent of the undertaking of the surety depends upon the wording of the agreement as interpreted within the framework of general federal principles of suretyship and contract law.[2] As a general rule the terms of a bail contract are to be construed strict-ly in favor of the surety, who may not be held liable for any greater undertaking than he has agreed to. *United States v. Eisner,* 323 F.2d 38, 43 (6th Cir. 1963). However, "[l]ike any other contract a bail bond should be construed to give effect to the reasonable intentions of the parties." *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir. 1969). Here the wording of the bonds[3] makes the intentions and commitment of Resolute as surety manifest.

2. Both the Sixth and the Ninth Circuits have held recently that federal bail-bond contracts must be interpreted in accordance with the law of the state in which they are made. *United States v. D'Anna,* 487 F.2d 899, 900 (6th Cir. 1973); *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir. 1969). We respectfully decline to follow their authority because we believe that it relies uncritically and without analysis upon older cases which were decided when the following statute was in effect:

[former 18 U.S.C. § 591]. Arrest and removal for trial. For any crime or offense against the United States, the offender may, by any . . . judge of the United States . . . *of any State where he may be found, and agreeably to the usual mode of process against offenders in such State,* and at the expense of the United States, *be arrested and imprisoned, or bailed, as the case may be,* for trial before such court of the United States as by law has cognizance of the offense. . . (emphasis added.)

Although former section 591 was interpreted as mandating that state law govern in questions concerning bail, *Heine v. United States,* 135 F.2d 914, 916 (6th Cir. 1943); *Palermo v. United States,* 61 F.2d 138, 140 (8th Cir. 1932); *cf. Western Surety Co. v. United States,* 72 F.2d 457 459 (9th Cir. 1934); *Western Surety Co. v. United States,* 51 F.2d 470, 471 (9th Cir. 1931); *National Surety Co. v. United States,* 29 F.2d 92, 99 (9th Cir. 1928), it is no longer a law of the United States. Procedures and conditions for admission to bail in the federal courts and for revocation, modification, etc. are now governed by The Bail Reform Act of 1966, 18 U.S.C. § 3141 et seq. Forfeiture and exoneration are controlled by Sections (e) and (f) of Rule 46 of the Federal Rules of Criminal Procedure. Although not used here, there is even a standard federal format for appearance bonds. Form 17, Federal Rules of Criminal Procedure. In view of the pervasive federal regulation of federal bail procedures and conditions, we believe that the interpretation of bail contracts to which the government is a party is and should be controlled by federal common law.

3. We, the undersigned, jointly and severally acknowledge that we and our . . . personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $10,000.

The conditions of this bond are that the defendant Thomas Miller is to appear before United States Magistrate for the Northern District of Georgia, at Atlanta, Ga., and in the United States District Court for the Northern District of Georgia at Atlanta, Ga., and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the magistrate or by the United States District Court for the Northern District of Georgia or any other United States District Court to which the defendant may be removed or the cause transferred; that the defendant is not to depart the Northern District of Georgia, or the jurisdiction of any other United States District Court to which the defendant may be removed or the cause transferred after he has appeared in such other district pursuant to the terms of this bond, except in accordance with such orders or warrants as may be issued by the magistrate or the United States District Court for the Northern District of Georgia or the United States District Court for such other district; that the defendant is to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the

No matter how strictly the wording of the commitment made by Resolute is construed in its favor, that commitment was broad: the surety explicitly agreed to insure that Miller would "abide *any* judgment entered in such matter *by surrendering* himself *to serve any sentence* imposed *and obeying any order* or direction *in connection with such judgment as the court imposing it may prescribe.*" (emphasis added). Beyond peradventure, a fair reading of the undertaking would lead any reasonable person to the conclusion that the bond covers the situation at bar in the assault case. Clearly the court's direction to Miller in the assault case to "report to the United States Magistrate, Room 505, Old Post Office Building, Atlanta, Georgia on or before June 10, 1974, between the hours of 9:00 a. m. and 2:00 p. m., to abide the judgment of the court herein" was an order in connection with the judgment and was additionally a direction to surrender to serve sentence, as well as a postponement of the commitment to custody until June 10. Miller disobeyed. Thus, there was a clear and direct violation of the terms of the bond. Nevertheless, Resolute seeks to escape liability on its undertaking by invoking a rule of law that a surety is automatically exonerated when sentence is *passed.* Its logic runs that once a sentence of incarceration has been pronounced all hope of parole vanishes and the risk of flight is materially increased. It argues that this increased risk—which it says is not within the contemplation of the parties—may not be imposed upon the surety without his specific consent.

█ Resolute's argument is not without appeal; it has been accepted by some courts, e. g., *United States v. D'Anna,* 487 F.2d 899 (6th Cir. 1973). The decision in *D'Anna,* however, turned upon the Sixth Circuit's belief that it was required to apply Michigan law, which is unequivocal that

once sentence has been pronounced a surety's liability terminates and a trial court is without authority to continue bond without the surety's consent. *People v. Brow,* 253 Mich. 140, 234 N.W. 117 (1931). We have rejected the proposition that the law of any particular state controls and instead look to the general rule. We find it to be, as it should be, that the effect of the pronouncement of sentence on the liability of the surety depends almost entirely upon the terms of the bond. When the surety has only undertaken to have his principal in court until the case is determined, sentencing exonerates. But when, as here, the bond states that the principal is to surrender himself for execution of the sentence and to abide by orders of the court in connection with judgment, the pronouncement of sentence does not exonerate the surety, who remains liable during any reasonable postponement of sentence. 8 Am. Jur.2d, *Bail and Recognizance* § 105 (1963); 8 C.J.S. *Bail* § 79g. (1962). *See United States v. Gonware, supra,* 415 F.2d at 84.

Moreover, in attempting to divine what the parties meant by the language they used, we agree with the observation of the Ninth Circuit that

. . . it is a common practice in the federal courts as well as the state courts, for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence. Even a bail bond broker would not expect the defendant to pay for an additional bond during . . . [a short, reasonable] stay of execution. Given this widespread practice, it is reasonable that the parties to this bail bond intended that the surety would remain liable during a reasonable stay of execution of the sentence.

*United States v. Gonware, supra,* 415 F.2d at 84.

It is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated.

amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

In short, we conclude that there is no *per se* federal rule that the pronouncement of sentence exonerates a surety. Rather, we hold that an appearance bond may be extended to cover reasonably brief postponements of the execution of sentence. During such a postponement a surety remains liable on the bond if by it he has agreed to such liability. Here Resolute clearly bound itself by the language of its undertaking to insure that Miller would appear in accordance with the court's order to commence serving his sentence. Given the nature of its undertaking, whether or not Resolute was informed of the postponement of sentence is immaterial. *Stuyvesant Insurance Co. v. United States,* 410 F.2d 524, 526–27 (8th Cir.), *cert. denied* 396 U.S. 836, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969); *United States v. Caro,* 56 F.R.D. 16 (S.D.Fla. 1972).

Resolute has pointed out for the first time on appeal [4] that the court's order of judgment and commitment in the transportation case, unlike that in the assault case, makes no mention of a postponement of custody and does not, by its terms, continue the bond in that case. Rather, it simply recites that ". . . the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of three (3) years . . . but the execution of this sentence shall commence to run from the expiration of, or legal release from, the sentence imposed this day in Criminal Number 28,512 [the assault case]."

There was no need for the court to continue the bond specifically. As determined above, the bonds in these cases continued by their own terms until Miller surrendered for service of sentence. Nor was there need to postpone the commencement of the transportation sentence, since by its existing terms it was not to commence until the end of the assault sentence.

It is clear, however, that Resolute stood to be exonerated on both bonds as soon as Miller went into custody in either case. This is so because, had Miller come into the custody of the government, Resolute would have lost all power and authority over him and so could no longer have been held responsible for his movements. But Resolute's contention that Miller was committed to the Attorney General's custody in the transportation case immediately upon issuance of sentence is spurious. The judgments and commitments in the two cases were issued at the same time by the same court to the same defendant. They must be read in pari materia. Such a reading shows the following contemplated sequence of events: First, Miller was to remain at large until June 10—out of the custody of the Attorney General. Next, on June 10, he was to surrender to the custody of the Attorney General and commence serving the assault sentence. Finally, after serving or being legally released from the assault sentence, he was to continue in custody of the Attorney General to serve the transportation sentence. Thus, no exonerating event as to either bond was to occur until June 10. Prior to this date, in violation of the conditions of the transportation bond, Miller departed the Northern District of Georgia.[5] His surety is liable for the transgression.

AFFIRMED.

---

4. Because we hold there was no error, we need not consider the government's argument that the point was waived.

5. Resolute admits in its brief that Miller fled the jurisdiction of the court. The flight was, of course, also a violation of the assault bond.