**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**John M. CARR, Jr., Alias John
Doe, Defendant.**

**Appeal of David CHERNICK and
Anthony Bellini, Sureties.**

No. 79–1026.

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1979.

Decided Nov. 5, 1979.

Edward John Mulligan, Warwick, R. I.,
for appellant Anthony Bellini.

Mortimer C. Newton, Providence, R. I., for appellant David Chernick.

Robert C. Power, Sp. Atty., U. S. Dept. of Justice, Washington, D. C., with whom Paul F. Murray, U. S. Atty., Providence, R. I., was on brief, for appellee.

Before COFFIN, Chief Judge, KUNZIG,* Judge, U.S. Court of Claims, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

This is an appeal from a judgment in favor of the United States against two sureties for forfeiture of a bond violated by a criminal defendant who failed to appear at trial. The case requires us to construe how much of a criminal proceeding was covered by the sureties' undertaking.

Defendant Carr was arrested on September 13, 1976 on charges of extortion. The next day, defendant and two sureties, Chernick and Bellini, executed before a magistrate an appearance bond in the amount of twenty thousand dollars. On November 11, the grand jury indicted Carr for extortion in violation of 18 U.S.C. §§ 892 and 894. On November 18, defendant was arraigned before the magistrate; the sureties were not present. The parties discussed whether the bond covered the conditions of release after the indictment. Defense counsel requested that the defendant be released into his custody for a few minutes until the sureties arrived. The magistrate concluded that this would not be necessary; the bond would still apply without further action by the sureties because the sureties had not limited their undertaking to the pre-indictment period. The United States Attorney concurred but queried whether an indictment did not constitute a new proceeding. The magistrate then endorsed the bond, noting that it was to remain in full force and effect, and added the indictment number to the magistrate's docket number on the caption of the bond.

The defendant failed to appear for trial and could not be located. The district court forfeited the bail on February 25, 1977; on September 11, 1978, the government moved for judgment against the sureties. The sureties objected, but the district court found for the government, ruling orally that (1) federal law governed the interpretation of the bail bond; (2) the language of the contract indicated that the bond continued throughout the various stages of a criminal proceeding; and (3) the sureties had not been exonerated from their obligation.

The sureties contend here essentially that they guaranteed the defendant's appearance only at the arraignment on the indictment. In support of this interpretation they argue under Rhode Island law and the "practice" in the United State District Court in Rhode Island that an indictment commences a new proceeding distinct in quality from what has preceded it. Thus, their expansive promise was impliedly limited to guaranteeing the appearance of the defendant at the arraignment and their obligation expired when he did so appear. They further argue that the endorsement of the bond by the magistrate and his addition of the indictment number altered their undertaking so as to release them from their obligation. Finally, they contend that the defendant's appearance constituted a surrender into custody such as to exonerate them from liability. These arguments have no merit; we affirm.

■ We agree with the district court that federal law governs the interpretation of federal bail bonds. *United States v. Catino,* 562 F.2d 1 (2d Cir. 1977); *United States v. Miller,* 539 F.2d 445 (5th Cir. 1976).[1] "[F]ederal law governs questions

* Sitting by designation.

1. Three circuits hold that state law governs the interpretation of federal bail bonds, *United States v. D'Anna,* 487 F.2d 899 (6th Cir. 1973); *United States v. Gonware,* 415 F.2d 82 (9th Cir. 1969); *Palermo v. United States,* 61 F.2d 138 (8th Cir. 1932), *cert. denied,* 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933). These decisions seem to follow a repealed federal statute that required arrest and bail procedures to conform to state law, Act of Sept. 24, 1789 (ch. 20, § 33, 1 Stat. 91), 18 U.S.C. § 591 (1940) (repealed 1948). The cases offer no other rationale to support this rule.

involving the rights of the United States arising under national federal programs." *United States v. Kimball Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Since the ability of the federal criminal justice system to release prisoners on bail stems from the federal constitution and laws, the interpretation of the federal government's rights under bail bonds should also derive from a federal source. *See United States v. Kimball Foods, Inc., supra,* at 726, 99 S.Ct. 1448; *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

Moreover, the federal law of bail bond contracts should consist of uniform federal rules rather than state rules adopted as federal law. Federal bonds are already regulated by federal statutes, require the analysis of federal criminal law to interpret them, and may seek to achieve goals ignored or contradicted by state bail procedures. *United States v. Catino, supra,* at 2. Thus, "application of state law [could] frustrate specific objectives of the federal programs." *United States v. Kimball Foods, Inc., supra,* 440 U.S. at 728, 99 S.Ct. 1448, 1458. Further, application of federal rules will neither impinge on state policies, *cf. United States v. Yazell,* 382 U.S. 341, 352–58, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) (refusing to apply federal rule of decision because subject pervasively and traditionally regulated by states), nor disrupt the commercial practices of local sureties because each bond is a separate contract, *cf. United States v. Kimball Foods, Inc., supra,* 440 U.S. at 739–740, 99 S.Ct. 1448 (declining to apply federal rule of decision in area where there is extensive commercial reliance on state rules).

■■■ The starting point for determining the extent of the sureties' obligation is "the language of [their] undertaking." *United States v. Miller,* 539 F.2d 445, 449 (5th Cir. 1976). Here, the language of the bond re-

quired the defendant to appear at his arraignment and "at such other places as the defendant may be required to appear". Further, "[the defendant is] to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe." Finally, the sureties agreed that "this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated." We think that the language of the bond clearly demonstrates that the sureties guaranteed the defendant's appearances throughout the criminal proceedings, or until the sureties were exonerated in accordance with law.[2]

■■■ In opposition, the sureties contend that it was the practice in the United States District Court in Rhode Island to consider post-indictment proceedings as distinct from pre-indictment proceedings and for pre-indictment bonds to expire when the defendant appeared for his post-indictment arraignment. The short answer to this argument was offered by the district court: these sureties as professional bondsmen cannot be heard to argue that their intentions were other than those expressed in the plain language of the contract. While this rule is a bit too broad, for the meaning of words in a contract can only be understood in reference to their usage in a particular context, *see* A. Corbin on Contracts, § 555 (1960), we think the district court was correct in its conclusion here. The sureties used words having plain reference to stages later in criminal proceedings than an indictment. Their only evidence of a contrary practice in the Rhode Island court was some hesitation by the magistrate and the United States Attorney in concluding that the bond remained in effect. This deliberation and the query of the United States Attorney

2. Form 17 appended to the Federal Rules of Criminal Procedure sets out the language for a simple appearance bond. None of the language in the text quoted from the bond executed by Chernick and Bellini is found in the model appearance bond. Thus, with the means available for drafting a bond covering only the defendant's appearance at the arraignment, we must conclude that the sureties intended to be liable for the more extensive promises in their bond.

certainly do not prove local practice or custom with sufficient clarity to overcome the ordinary and foreseeable meaning of the language of the bond, especially when the magistrate did conclude that the bond was still in effect. Other federal courts of appeals have construed similar language in bail bonds to extend the obligation of the surety beyond sentencing when the prisoner's incarceration was briefly stayed, *United States v. Miller, supra,* 539 F.2d at 445, or stayed pending appeal, *United States v. Catino, supra,* 562 F.2d at 1. *See also United States v. Gonware,* 415 F.2d 82 (9th Cir. 1969). These sureties, who have guaranteed that the defendant would serve his sentence, must be understood to have made themselves liable, at least, for the defendant's flight before trial.

The sureties further contend that they were exonerated either by the endorsement of the bond by the magistrate without their consent or by the appearance of the defendant at his arraignment. Both arguments suffer from a similar defect: they presume that the sureties' obligation did not extend beyond the indictment until the magistrate's actions at the arraignment. This is erroneous. The endorsement of the bond and the adding of the indictment number by the magistrate were merely ministerial acts that made no alteration in the sureties' undertaking. *See United States v. Hesse,* 576 F.2d 1110 (5th Cir. 1978).

The sureties' other argument, that the defendant surrendered himself into custody when he appeared at his arraignment, thereby exonerating them, also obscures what occurred at the arraignment. While it is true that the "timely surrender of the defendant into custody" will exonerate the surety from liability, Fed.R.Crim.P. 46(f), "surrender" is a technical term requiring strict compliance with proscribed procedures, such as arrest of the defendant by a surety, recommission of the defendant, and appropriate notation on the bond by a judicial officer. 18 U.S.C. § 3142. Here, none of these procedures were followed and the sureties cannot be exonerated. The defend-

ant merely complied with one requirement of the bond and such compliance does not obviate the necessity of future, promised compliance.

*Affirmed.*