**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gustavo A. GIL, Defendant,**

**Cotton Belt Insurance Company, a Tennessee Corporation, Surety-Appellant.**

No. 80–5291.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 28, 1981.

## I

Cotton Belt Insurance Company (Cotton Belt), a Tennessee corporation doing business in Florida, named as its agent William Panasuk, the sole owner of a Miami bonding business called Speedy Bail Bonds. It also authorized George Athans, a licensed bail bondsman employed by Panasuk, to act as its agent. Upon appointing these individuals as agents, Cotton Belt filed statements of general bond power in the district court, giving each of them a general power of attorney to write bail bonds on behalf of Cotton Belt up to $105,000 "ON ANY ONE RISK." *See* Record Excerpts at M; Brief for the United States at App. 3. The statements set forth several terms and conditions of the agents' authority, and emphasized in large print: "All bail bonds and recognizances must be accompanied by an individual, numbered power of attorney properly executed." *Id.*

An "individual, numbered power of attorney," known in the bail bonding trade as a "special power," or "executing power," authorizes an agent to write a particular bail bond and states the maximum amount for which the bond may be written. At one point Cotton Belt issued special power forms with large maximum figures to Harold Seigel, a bondsman formerly associated with Panasuk. These forms had blanks in which the name of the agent, the defendant, and other particulars of the bonds they were to accompany were to be written. When Seigel severed his association with Speedy Bail Bonds, these blank special power forms fell into Panasuk's hands. Cotton Belt was aware that the outstanding special powers had not been returned and it made some attempts to retrieve them. Panasuk, however, told Cotton Belt that the special powers had either been lost, stolen, or misplaced. Cotton Belt never reported the disappearance of the blank special powers to the district court.

In December of 1979, Cotton Belt informed all of its agents, including Panasuk and Athans, that they could not post bonds for more than $10,000 without special clearance from Cotton Belt managers. Cotton

Hurley, McNulty, Stakelum & O'Connor, James J. O'Connor, New Orleans, La., Ferguson & Gettinger, P.A., Randolph Q. Ferguson, Coral Gables, Fla., for surety-appellant.

Martin R. Raskin, Sp. Atty., Dept. of Justice, Miami, Fla., Sara Criscitelli, Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJOFLAT and THOMAS A. CLARK, Circuit Judges.

TJOFLAT, Circuit Judge:

The sole question presented in this appeal is whether the district court abused its discretion in failing to set aside the forfeiture of two bail bonds, pursuant to Federal Rule of Criminal Procedure 46(e)(2). We find that the district court acted well within its discretion in declining to set aside the forfeiture, but that it erred in calculating the amount to be forfeited under the bonds.

Belt did not, however, inform the courts of this internal policy.

In January of 1980, Gustavo Gil was arrested on narcotics charges. A magistrate in the Southern District of Florida set Gil's bail at $150,000. Shortly thereafter, Panasuk and Athans appeared before a federal magistrate at his home, and presented two special powers authorizing a bond not to exceed $55,000 and a bond not to exceed $105,000. Athans' name was handwritten in the blank entitled "Executing Agent" on the $105,000 power and Panasuk's name was written in the same blank on the $55,000 power. On both powers Gil's name appeared in the blank entitled "Defendant." Record, vol. I at 19–23. It is not clear when these blanks were filled in. Panasuk proceeded to write a bond for $100,000, and Athans wrote a bond for $50,000 in the magistrate's presence. Panasuk's bond for $100,000 was then attached to Athans' special power for $105,000, and Athans' bond for $50,000 was attached to Panasuk's special power for $55,000. *Id.* Apparently, the magistrate accepted the special powers and bonds without noticing the mix-up and without inquiring further as to the agents' authority. Gil was subsequently released.

Gil later jumped bail, and on the magistrate's recommendation, the district court issued an arrest warrant and ordered that the two bonds be forfeited. Only when Cotton Belt received two letters demanding payment of $100,000 and $50,000 did it learn that the two bonds had been written for Gil; it had not authorized its agents to execute the bonds or to use its special power forms for this defendant, nor had it received any premium, collateral or other consideration in connection with the two bonds. Cotton Belt moved to set aside the judgments of forfeiture pursuant to Feder-

al Rule of Criminal Procedure 46(e)(2),[1] claiming, among other things, that Panasuk had exceeded his authority in posting the $150,000 bond by improperly "stacking"[2] two powers of attorney. The district court denied the motion and appellant moved for a rehearing, arguing, *inter alia*, that the bonds were illegal and improper because the bond Panasuk signed was attached to Athans' power of attorney, and vice versa.

The district court reaffirmed its order of forfeiture, stating:

> [T]he powers in question gave the apparent authority to the person utilizing those powers to post the bond in the amount in question, and if there be any limitation of that power whatsoever, the burden was upon Cottonbelt [sic] Insurance Company to notify the clerk of this Court and the Court itself, that the apparent authority of these individuals was not as they purported to be—the Court is of the opinion that if there was any question about the existence of those powers and their possible utilization, particularly after the pattern and course that Mr. Panasek [sic] obviously had taken, at or about the same time as they were filed with the Court, that in fact Cottonbelt [sic] should have taken some action to prevent the same.[3]

Record, vol. II at 34–35. Cotton Belt now appeals the district court's decision.

## II

Cotton Belt argues that the government was not reasonable in relying on the apparent authority of Panasuk and Athans to execute the bonds and that the district court therefore should have granted its motion to set aside the forfeiture. In order to prevail, Cotton Belt must show that the district court abused its "wide discretion" in refusing to set aside the forfeiture. *United*

---

1. Rule 46(e)(2) provides as follows:

   The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

2. "Stacking" and "piggybacking" are terms applied to "the use of two or more bond powers issued by the same company to achieve an aggregate amount in excess of the bond set for

a single individual." Brief of Defendant-Surety-Appellant at 6. *See also* record, vol. I at 62.

3. The "pattern and course Mr. Panasek [sic] obviously had taken" refers to the fact that Panasuk had been arrested and indicted on narcotics charges several months before he executed the bonds for Gil and was convicted shortly thereafter.

*States v. Hesse*, 576 F.2d 1110, 1114 (5th Cir. 1978). *See United States v. Gray*, 568 F.2d 1134 (5th Cir. 1978) (per curiam); *United States v. Foster*, 417 F.2d 1254, 1256 (7th Cir. 1969) ("the trial court's judgment may be reversed only if it must be said that the decision was arbitrary and capricious"). "By its motion to set aside a bond forfeiture, the surety assumes the burden of proving that an injustice is done by the forfeiture." *Id. See United States v. Nolan*, 564 F.2d 376, 378 (10th Cir. 1977).

█ In determining whether the district court abused its discretion, we must look to general principles of federal common law. *See United States v. Miller*, 539 F.2d 445, 447 n.2 (5th Cir. 1976).[4] Under federal law "a principal can be held liable for even fraudulent acts of its agent if the agent had apparent authority." *United States v. Sanchez*, 521 F.2d 244, 246 (5th Cir. 1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 59–60, 50 L.Ed.2d 77 (1976). "Apparent authority exists whenever a principal manifests to a third person that an officer or agent may act in its behalf, and the third person in good faith believes that the authority exists. When that third person reasonably relies upon that apparent authority to his detriment, the principal is estopped to deny the authority." *Clark Advertising Agency, Inc. v. Tice*, 490 F.2d 834, 836 (5th Cir. 1974). *See Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974); *Restatement (Second) of Agency* §§ 8 & 159 (1958).

█ By filing statements of general bond power for Panasuk and Athans, Cotton Belt manifested to the government that these individuals were its agents, authorized to write bonds on its behalf. These statements of general bond power notified the government that each of the agents was authorized to write bonds up to $105,000 "on any one risk." Record Excerpts at M; Brief for the United States at App. 3. Further, Cotton Belt either issued to Panasuk, or through its own neglect allowed Panasuk to obtain, the valid special power forms that he presented to the magistrate as evidence of his, and Athans', authority to write the bonds in this case. Thus, Cotton Belt did communicate to the government that Panasuk and Athans were authorized to bind it.

Cotton Belt argues, however, that the government was not reasonable in believing in the agents' apparent authority. *See Sanchez*, 521 F.2d at 246. For one thing, it argues, "stacking" powers, as Athans and Panasuk did here, is not customary.[5] Thus we must consider whether the use of two special powers, valid on their face, by two individual agents to meet the bail requirements of one defendant was so irregular as to place the magistrate on notice that the agents were acting beyond their authority.

Cotton Belt indicates that it is acceptable for agents of two different bonding companies to pool special powers to provide bail for a single defendant, *see* record, vol. I at 62, but argues that, for policy reasons, one bonding company would not wish for two of its agents to pool special powers. *See* Brief of Defendant-Surety-Appellant at 15–16. Apparently Cotton Belt feels that these policy reasons are so evident that a magistrate could not reasonably believe that a surety

---

4. In *Miller* we stated that the "extent of the undertaking of the surety depends upon the wording of the agreement as interpreted within the framework of general federal principles of suretyship and contract law." *Miller*, 539 F.2d at 447. In a footnote we observed that other circuits had held that federal bail-bond contracts must be interpreted in accordance with the law of the state in which they were made. We rejected this authority because "[i]n view of the pervasive federal regulation of federal bail procedures and conditions, we believe that the interpretation of bail contracts to which the government is a party is and should be con-trolled by federal common law." 539 F.2d at 447 n.2. Our reasoning in *Miller* is also applicable here: if the regulation of bail procedures is so pervasive that bail contracts are to be interpreted through federal law, then questions involving the acceptance of bail contracts should also be governed by federal common law—at least in the context of a motion to set aside a forfeiture in federal court.

5. Cotton Belt also claims that stacking powers is illegal. It fails, however, to cite any statute or regulation, on the state or federal level, that makes this practice illegal in the federal courts.

company would authorize such an action.[6] We agree with the Ninth Circuit in *United States v. Eskew*, 469 F.2d 278 (9th Cir. 1972), however, which found that a court official acted reasonably in accepting as valid and authorized two bonds, accompanied by two separate special powers, executed by one bonding agent for a single defendant. In that case the Ninth Circuit held that without language in the powers stating that they could not be used in combination with other powers issued by the same company, there was nothing to alert the clerk that the agent might be exceeding his authority. *Id.*, 469 F.2d at 279.

■ Cotton Belt argues that it did communicate its policy against in-house stacking of powers in the statements of general bond power on file with the court. The statements recited that each agent "is limited to appearance bonds in a penalty not to exceed ON ANY ONE RISK one hundred five thousand ($105,000.00) Dollars." Record Excerpts at M; Brief for the United States at App. 3. Even construing this language strictly in favor of the surety, *see United States v. Amend*, 622 F.2d 782, 783 (5th Cir. 1980), however, it only indicates that one agent may not exceed the $105,000 limit on one risk. The limitation runs with the agent, not the risk: there is nothing in the language of the general power to indicate that two agents may not both execute bonds of up to $105,000 each to be applied to the same risk. Without notifying the government of its policy against stacking, appellant cannot require that the government be bound by that policy.

Cotton Belt also argues that other conditions under which the magistrate accepted the bonds indicate that he was unreasonable in believing them authorized. It makes much of the fact that the magistrate was at home when he accepted the bonds, and that because he was at home, he was unable to consult with other court officials or check the statements of general power on file. Since the magistrate is the official who regularly takes appearance bonds, however, *see* record, vol. I at 62, there is no reason to assume that he would consult with other court officials before accepting the bonds even if he was at the office, or that doing so would have been helpful. Further, since the statements of general bond power contained no language limiting Panasuk's and Athans' authority to execute these bonds, it is of little import that the magistrate did not have them on hand when he accepted the bonds.

■ Finally, Cotton Belt claims that there was no evidence that the magistrate knew Panasuk or Athans or that he had ever known them to be authorized to execute bonds for over $100,000. There was, however, no evidence that he did not know them or that he had not known them to write bonds for large amounts in the past. Since the party moving to set aside the forfeiture bears the burden of proof, *Foster*, 417 F.2d at 1256; *Nolan*, 564 F.2d at 378, the general lack of evidence concerning the magistrate's knowledge is detrimental, rather than helpful, to Cotton Belt's case.

■ While evidence concerning the background of the transaction is generally scarce, we find that the district court did not abuse its discretion in finding that the situation merited enforcement of the forfeiture. *See Gray*, 568 F.2d at 1134. Cotton Belt was extremely lax in its attempts to retrieve Seigel's surplus special power forms from Panasuk, as well as in entrusting its business to someone in Panasuk's position.[7] Further, Cotton Belt made no

6. Cotton Belt offers as evidence the statement of an individual in the district court clerk's office that he would not accept a bond executed through use of two special powers issued by one surety. Record, vol. I at 62. Since it is the magistrate's, and not the clerk's, duty to accept bonds, however, record, vol. I at 62, this statement is irrelevant. Plainly relevant, on the other hand, is Athans' testimony that when asked by Panasuk to stack powers with him, he did not find the procedure unusual. Record, vol. II at 30.

7. As noted briefly in the facts, Panasuk had been indicted on narcotics charges a few months before he wrote the bond for Gil, and he was convicted shortly thereafter. While Cotton Belt argues that the magistrate should have known of Panasuk's indictment and therefore should not have relied upon his apparent

effort to notify the courts of the missing special powers or of its requirement that its agents receive approval before writing bonds exceeding $10,000. In the absence of any warning of possible problems, the magistrate was justified in relying on the special powers, valid on their faces, that Panasuk and Athans presented. *See Sanchez,* 521 F.2d at 246. *See also Restatement (Second) of Agency* § 31(2) (1958). Since this reliance clearly has proved detrimental to the government, the district court could find that justice required a forfeiture. *Gray,* 568 F.2d at 1134.

■ Since the government does rely on a theory of apparent authority, however, it cannot expect to recover more from Cotton Belt than the amount for which agents Panasuk and Athans had apparent authority to bind it. On their faces the bonds only created liability for $105,000. Athans, who had a special power for $105,000, wrote a bond for $50,000. Panasuk had a special power for $55,000, but he wrote a bond for $100,000. The government could only rely on Panasuk's apparent authority to write a bond for $55,000, since that was all his special power authorized. " '[T]hose who deal with an agent knowing that he is authorized to act by virtue of a power of attorney are bound to ascertain and know the character and extent of the power of attorney under which he assumes to act.' " *DeBoer Construction, Inc. v. Reliance Insurance Co.,* 540 F.2d 486, 490 (10th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (quoting 3 Am.Jur.2d *Agency* § 81 (1962)). *Accord Restatement (Second) of Agency* § 167 (1958). The notice contained in Panasuk's special power defeats any right the government might otherwise have to rely on his apparent authority to execute the full amount of the bond. *See DeBoer,* 540 F.2d at 491 n.2; *Restatement (Second) of Agency* § 167, comments a and c (1958).

Here the government never sought equitable reformation of the contract, but chose instead to enforce it on a theory of appar-

ent authority. That being the case, we consider irrelevant the government's arguments concerning the rules of contract interpretation and the possibilities of an inadvertent switching of papers. Panasuk presented the government with a special power allowing him to write a bond for $55,000. The government could, therefore, only rely on his authority to write a bond for that amount. Accordingly, we affirm the forfeiture of both bonds and the amount forfeited under Athans' bond, but remand for an adjustment of the amount forfeited under Panasuk's bond to $55,000.

AFFIRMED, in part, and REMANDED, in part, with directions.

---

authority, there is less reason for the magistrate to know of the indictment than for Cotton

Belt to know, especially since Cotton Belt wrote Panasuk's bail bond.