**UNITED STATES of America, Plaintiff,**

v.

**Mike Tellez BANKS, Defendant.**

**Crim. No. 83–1041–JLI.**

United States District Court,
S.D. California.

Nov. 13, 1985.

Edward C. Weiner, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

---

J. Edward Harris, Dimeff & Harris, San Diego, Cal., for Dependable Ins. Co.

## MEMORANDUM DECISION

GORDON THOMPSON, Jr., Chief Judge.

This case requires the Court to determine the scope of a surety's contractual obligations under a bail bond contract, a contract interpretation issue of great interest to criminal defendants, sureties, and the government.

### I

Mike Tellez Banks was arrested and taken into custody on November 4, 1983 as he crossed the International Border at San Ysidro with heroin concealed in his 1972 Oldsmobile. At his initial appearance on November 7, 1983, Magistrate Curtis McKee set a cash or corporate surety bond in the amount of $100,000. On November 10, 1983, a five-count indictment was returned against defendant Banks, charging him with importation of heroin, possession of heroin with intent to distribute, illegal importation of monetary instruments, false statements, and interstate and foreign travel in aid of racketeering enterprises. Defendant was afforded a bail review on November 16, 1983 at which Magistrate McKee affirmed the $100,000 bond. A second bail review hearing was held on December 13, 1983 and the bond was re-af-firmed by Magistrate McKee. On December 21, 1983, District Judge J. Lawrence Irving held another bail review hearing, affirming the written findings of Magistrate McKee and the bond set at $100,000.

On January 18, 1984, upon the posting of the $100,000 bail bond by the surety Dependable Insurance Company, Inc. [Dependable], defendant Mike Tellez Banks was released from custody. The defendant made all his required appearances before the district court up to and including his stipulated facts court trial on April 5, 1984. Judge Irving found Mr. Banks guilty on all counts. Sentencing was set for May 25, 1984, and later continued until June 11.

Defendant appeared before Judge Irving for sentencing on June 11, 1984. At the conclusion of the sentencing, defense counsel asked the Court for a short extension (until the end of the day) to "file the notice of appeal and be able to do all the necessary paperwork downstairs to present and file this bond pending the appeal of this matter." Judge Irving ordered defendant to appear for a status hearing on August 27, denied the government's request to raise the bond pending appeal to $200,000, but did not explicitly exonerate the appearance bond executed by Dependable. Nor did he explicitly continue the appearance bond posted by Dependable as an appeal bond.[1]

---

1. Following are the relevant portions of the June 11, 1984 2:00 p.m. sentencing hearing of Mr. Banks:

   THE CLERK: No. 15 on calendar, Case No. 83–1041, United States of America v. Michael Tellez Banks.

   MR. ESPINOZA: Edmundo Espinoza on behalf of Mr. Mike Banks, who is present in court on bond.

   MR. WEINER: Edward Weiner for the United States.

   (Defendant sentenced and appeal rights given.)

   MR. ESPINOZA: Your Honor, concerning the matter of bail pending appeal, your Honor, I would ask the Court—Mr. Banks' bail is $100,-000. I have contacted the original bail bondsman, Mr. Reeder, who originally posted this bond, and Mr. Reeder is in his office right now. I would ask the Court to allow me until 5:00 o'clock today, or 4:30, to file the notice of appeal and be able to do all the necessary paperwork downstairs to present and file this bond pending the appeal of this matter.

   As the Court well knows, Mr. Banks has made all the Court appearances in this case. We had approximately two to three bail hearings in this case, one before this Court. At that time we presented all the evidence that we had, proof of employment and family ties in Los Angeles and the lack of prior record and so forth, and at that time the Court, as well as Mr. Weiner—Mr. Weiner said Mr. Banks was not going to make his court appearances, the reason he wanted to post the bond was because he wanted to leave the country and fail to appear. And Mr. Banks has shown this Court: He is here. He has been sentenced by this court.

   Mr. Banks is a U.S. citizen, too many ties in the community to be able to leave the state or the country.

   I would ask the Court to allow me that time and set the bond in the same amount, consider-

Events subsequent to the sentencing are somewhat unclear. What is clear, however, is that defendant Banks never obtained a separate appeals bond. Yet Mr. Banks did appear for status conferences before Judge Irving on August 27, 1984 and October 29, 1984. The Ninth Circuit later affirmed Banks' conviction.[2] Notice of the hearing to file the certified copy of the Ninth Circuit's affirmance was sent to defense counsel on April 18, 1985.

The date for filing the Ninth Circuit's decision in the district court was set for May 13, 1985. That date arrived; unfortunately defendant didn't. The government moved for forfeiture of the "appeal bond in this case" and the issuance of a bench warrant. Judge Irving granted both motions.[3]

ing the overall circumstances and the facts that I just indicated to the Court.

I don't think that the Court should have any risk whatsoever as far as Mr. Banks either going into Mexico or doing anything in violation of the Court's conditions in this case.

THE COURT: Mr. Espinoza, let me stop you. What is your position, Mr. Weiner? Do you have any objection to his remaining out?

MR. WEINER: Well, we do. He now stands a convicted felon. On previous occasions he was making his court appearances and I was happy to see he made them. The one factor I would like to indicate to the Court which is involved in the appeal seems to be a very minor issue; that is, the sufficiency of the search warrant in Los Angeles which involved only the one gram of cocaine which was seized and not charged in this particular case. Unless Mr. Espinoza has some other issues to bring to the Ninth Circuit's attention on the appeal it seems to me it would be in the nature of possibly a frivolous appeal and not even one that would affect the sentencing and the conviction.

THE COURT: I can't imagine Mr. Espinoza filing a frivolous appeal, and I'm sure he doesn't want to reveal his innermost secrets to you as to the basis of the appeal.

MR. ESPINOZA: I had told Mr. Weiner about this way back. Mr. Weiner knows that.

MR. WEINER: But, in all seriousness, I believe he stands in a different light now and probably the bond should be at least doubled to $200,000.

MR. ESPINOZA: Your Honor, it's impossible. Mr. Banks was two and a half months in custody—

THE COURT: By impossible you mean it's impossible for him to make $200,000?

MR. ESPINOZA: To make over $100,000. He made the arrangements. I told him to make the arrangements. I even made the arrangements for the bail bondsman to reduce or be able to negotiate even the ten percent in this case. He could not post $100,000. He spent two and a half months at MCC.

THE COURT: To refresh my recollection, what is—is it a corporate surety?

MR. ESPINOZA: Corporate surety totally supported by and guaranteed by a property which is in Los Angeles.

THE COURT: I remember that.

MR. ESPINOZA: And we went through it.

THE COURT: All right. So your request is for me to allow Mr. Banks to remain on bond until sentencing?

MR. ESPINOZA: Correct.

THE COURT: And the Government, Mr. Weiner, opposes it because he has now been sentenced.

MR. WEINER: That's right.

MR. ESPINOZA: On the same appellate bond to be in the same amount.

THE COURT: All right. All right. Give me a date, Lynn.

MR. ESPINOZA: Your Honor, we can have a review pending the appeal. We can have a review, status, so the bondsman could be around.

THE COURT: Why don't we set it for status in 60 days? I'll allow him to remain on bond for 60 days and order him to return here—How about August 7?

MR. ESPINOZA: That is fine.

THE COURT: We might make it a condition he be supervised by pretrial services. I don't think that was done originally because he was in custody.

MR. ESPINOZA: That's fine.

THE COURT: Mr. Vincent, do you want to make any comments?

PROBATION OFFICER: No, your Honor. We would be happy to supervise him.

THE COURT: You will be subject to supervision, Mr. Banks, during this period of time, and you are ordered to return to this courtroom at 9:00 a.m. August 27, 1984. Do you understand?

DEFENDANT: Yes, sir.

THE COURT: And if there is any contact with law enforcement authorities between now and August 27, that is to say if you violate any law and it's brought to my attention, you will go to jail immediately. Do you understand?

DEFENDANT: Yes, sir.

THE COURT: And if you fail to appear on August 27, 1984, I will order a warrant for your arrest. Do you understand?

DEFENDANT: Yes.

(Proceedings adjourned).

2. *United States v. Tellez Banks,* 758 F.2d 656 (9th Cir.1985).

3. The transcript of the Monday, May 13, 1985 2:00 p.m. hearing is as follows:

On July 12, 1985, the government moved for a default judgment on the forfeiture of the bond. Dependable responded by moving to set aside the forfeiture and exonerate the bond.

## II

Dependable claims that the bond should not be forfeited because it was no longer in effect when defendant Banks failed to surrender into custody after his conviction was affirmed. Dependable's argument is that the language of the bond only provided for Banks' appearances before the trial court prior to appeal of the conviction. The government contends that the bond remained in effect throughout the appellate process.

The central task thus presented in this case is to determine the extent of obligation undertaken by the surety Dependable, a matter of contract interpretation. Collateral to this question is the effect, if

THE COURT: And where might Mr. Banks be, Mr. Espinoza?

MR. ESPINOZA: I do not know where Mr. Banks is, your Honor. I talked to Mr. Banks concerning the notice that we have received from the Ninth Circuit in this matter the day after Mr. Weiner told me of the date.

THE COURT: Let me stop you. Why don't you call the case?

THE CLERK: No. 12 on calendar, Case No. 83–1041, United States of America v. Mike Tellez Banks for hearing petition requisite to filing certified copy of judgment from the U.S. Court of Appeals affirming the decision of the U.S. District Court.

MR. ESPINOZA: Your Honor, Edmundo Espinoza appearing on behalf of Mr. Michael Banks, who is not present in court.

MR. WEINER: Edward Weiner for the United States.

MR. ESPINOZA: As I stated to the Court, your Honor, sometime approximately—Mr. Weiner, about 10, 13 days ago?

MR. WEINER: I believe so.

MR. ESPINOZA: Mr. Weiner informed me in the hallway that he had received a notice from the Ninth Circuit stating about this date, May 13. The day after, I gave a call to Mr. Banks in Los Angeles, the same number that he's had for three or four years, and I talked to him and I explained what the Ninth Circuit had stated, and I told him there was a hearing today and that he was to be here to surrender. He told me that he understood and that he was going to be here.

any, of Judge Irving's rulings regarding the bail bond at the June 11, 1984 sentencing.

■ To put this issue into the proper contextual framework, it is necessary to reiterate the basic principles of bail bonds. A bail bond is a contract between the government and the defendant and the surety. . *United States v. Lujan,* 589 F.2d 436, 438 (9th Cir.1978); *United States v. Plechner,* 577 F.2d 596, 598 (9th Cir.1978); *accord United States v. Martinez,* 613 F.2d 473, 476 (3rd Cir.1980). As with any other contract, the liabilities of the parties under the contract depend upon the intention of the parties as evidenced by the wording of the contract. *United States v. Morales,* 91 F.R.D. 169, 171 (D.P.R.1981).

■ The language of the bond contract is to be strictly construed in accordance with its terms.[4] *United States v. Lujan,*

I tried calling him yesterday three or four times. The telephone rings but no answer. I called him two times this morning and again no answer; and Mr. Banks is not here.

THE COURT: Mr. Weiner.

MR. WEINER: We are going to move for the forfeiture of the appeal bond in this case and the issuance of a bench warrant after the Court, I guess, orders the mandate to be spread from the Court of Appeals decision.

THE COURT: All right. The mandate will be spread and the Court will issue a bench warrant for the arrest of Mr. Banks.

MR. ESPINOZA: Thank you.

THE COURT: Thank you, Mr. Espinoza. Bond will be forfeited.

(Proceedings adjourned.)

4. The circuits are split in their views on whether the bail bond should be interpreted in light of state or federal law. The Sixth and Eighth Circuits have ruled that bail bonds in federal criminal cases must be interpreted in accord with state law. *United States v. D'Anna,* 487 F.2d 899, 900 (6th Cir.1973); *United States v. Palermo,* 61 F.2d 138, 140 (8th Cir.1932); *cert. denied,* 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933). The First, Second, and Fifth Circuits have concluded that federal law should guide the interpretation of bail bonds. *United States v. Carr,* 608 F.2d 886, 887–88 (1st Cir.1979); *United States v. Catino,* 562 F.2d 1, 2 (2d Cir. 1977); *United States v. Miller,* 539 F.2d 445, 447 n. 2 (5th Cir.1976). Two circuits have found it unnecessary to decide the issue. *United States v. Martinez,* 613 F.2d 473, 477 (3rd Cir.1980);

589 F.2d 436, 438 (9th Cir.1978). The bond at issue here, labelled "Bond for Preliminary Appearance," contained the following pertinent language:

> The conditions of this bond are that ... the said defendant is to appear in the United States District Court for the Southern District of California in accordance with all orders and directions of the Court relating to appearance of the said defendant before said Court, or in any other United States District Court to which the case may be removed or transferred.

> . . . . .

> ... If the defendant complies with all of the conditions of this bond and appears as ordered, then this bond is to be void, but if the defendant fails to perform these conditions, payment for the amount of the bond shall be due forthwith.

■ The government argues that the language providing that the defendant must appear in accordance with "all orders" evidences the parties' intentions that the surety was to be responsible for defendant's appearance in the district court after appeal. This Court believes, however, that in this particular case the parties' intentions are better understood by examining what language, usually found in other bail bonds, was *not* included in this contract, and by examining the parties' actions as evidence of their intentions.

Many courts have examined similar language from other bail bonds in an effort to determine the parties' intentions as to the extent of the surety's liability.[5] Although interpreting virtually identical language, the courts' rulings have been diverse.[6] At least three other cases, *United States v. Martinez*, 613 F.2d 473 (3rd Cir.1980), *United States v. Catino*, 562 F.2d 1 (2d Cir.1977), and *United States v. Dinneen*, 577 F.2d 919 (5th Cir.1978), presented the same factual pattern as before the Court in this case: Defendant failed to appear for execution of sentence after his conviction was affirmed on appeal. In each case, defendant had not obtained an appeal bond separate from the appearance bond. Unlike the bond executed by Dependable, however, all of the bonds in these cases contained the provision that the bond was a "continuing bond" remaining in "full force and effect until exoneration." In addition, each of these bonds provided as a condition that the defendant would "surrender for execution of sentence." In *Martinez* and *Catino*, the Third and Second Circuits held that this language evidenced the parties' intent that the bond remain in effect throughout the appeal. In *Dinneen*, the Fifth Circuit concluded that this language only made the surety liable during brief, reasonable stays of execution and not for a

---

*United States v. Marquez,* 564 F.2d 379, 380 (10th Cir.1977).

An older Ninth Circuit case approved the use of state law to interpret bail bonds, *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir. 1969), but later Ninth Circuit opinions have characterized that ruling as not controlling. *See United States v. Mendoza-Acuna,* 764 F.2d 699, 701 n. 5 (9th Cir.1985) (noting that *Gonware* relied on a repealed statute which mandated that state law govern in questions concerning bail); *United States v. Vera-Estrada,* 577 F.2d 598, 599 n. 2 (9th Cir.1978) ("*Gonware* dictum is not controlling"). This Court also concludes that it is not necessary to determine whether state law or federal law should be used as a guide in interpretation in order to resolve the issue presented in this case.

5. *E.g., United States v. Martinez,* 613 F.2d 473 (3rd Cir.1980); *United States v. Carr,* 608 F.2d

886 (1st Cir.1979); *United States v. Dinneen,* 577 F.2d 919 (5th Cir.1978); *United States v. Catino,* 562 F.2d 1 (2d Cir.1977); *United States v. Marquez,* 564 F.2d 379 (10th Cir.1977); *United States v. Miller,* 539 F.2d 445 (5th Cir.1976); *United States v. D'Anna,* 487 F.2d 899 (6th Cir.1973); *United States v. Gonware,* 415 F.2d 82 (9th Cir. 1969).

6. *Compare United States v. D'Anna,* 487 F.2d 899, 901 (6th Cir.1973) (appearance bond does not extend surety's liability beyond sentencing) with *United States v. Martinez,* 613 F.2d 473, 478–80 (3rd Cir.1980) (appearance bond remains effective throughout appeal) and *United States v. Dinneen,* 577 F.2d 919, 921 (5th Cir. 1978) (appearance bond terminates at sentencing, allowing for brief stays of execution of sentence).

failure to surrender after affirmance of conviction on appeal.[7]

The principal Ninth Circuit case addressing the interpretation of a bail bond contract is *United States v. Gonware*, 415 F.2d 82 (9th Cir.1969). In that case, the trial court stayed the execution of defendant's sentence for approximately two days. When the defendant failed to appear two days later, the government moved to forfeit the defendant's bail. The bond provided for the defendant to appear in court "in accordance with all orders" or "wherever prosecution may be ordered." The court recognized that the bond did not expressly address the subject of stays of execution of sentence but concluded nonetheless that the parties intended the surety to remain liable during a short stay of execution of sentence. Key to the court's conclusion was its interpretation of "prosecution" as continuing until the date defendant begins serving his sentence. The Ninth Circuit also noted that its conclusion was reasonable in light of the widespread and common practice of the courts in granting short stays to allow defendants to get their affairs in order before serving their sentence.

To a certain degree, all of the bail bonds in these cases contained similar language.[8] All contained provisions that the defendant agreed to obey all court orders relating to appearance. This very basic provision is the essence of a bail bond contract—to guarantee appearance by the defendant. The bonds held to be in effect during or after appeal, however, also contained provisions relating to the bond's continuing nature and/or specifically requiring the defendant to surrender for execution of sentence.

By contrast, the language of the bond entered into by Banks and Dependable was distinctively different. Dependable's bond was entirely silent as to whether the bond was a "continuing bond." Neither does the bond contain any language about the bond continuing in full force and effect until exonerated by the court. Instead, the contract specifically provides that the bond would become void when the defendant complied with the conditions by appearing as ordered.

Based on this explicit language and the absence of language regarding liability during appeal found in other bail bonds,[9]

7. In another case with the same factual pattern, the Fifth Circuit reached a different conclusion based on the language in the bond contract. In *United States v. Amend*, 622 F.2d 782 (5th Cir. 1980), the court held that one of the bond's conditions was that defendant appear to surrender into custody after affirmance of her conviction on appeal. The bond provided that "if [defendant's] failure to appear is ... while awaiting sentence or pending appeal or certiorari after conviction, the penalty is a fine ... or imprisonment." *Id.* at 783. The court held that this provision reflected an agreement by the surety to assure defendant's appearance after conclusion of her appeal.

Three other cases, arising out of different factual circumstances, confronted bonds with language identical to that in *Martinez, Catino,* and *Dinneen.* In *United States v. Marquez*, 564 F.2d 379 (10th Cir.1977), the defendant was convicted but before sentencing was granted a new trial. The defendant failed to appear at the second trial. The Tenth Circuit held that the parties' intended the bond obtained for the first trial to be in effect for appearances at the second trial. In *United States v. Carr*, 608 F.2d 886 (1st Cir.1979), after the defendant failed to appear at trial, the surety argued that the bond only covered appearances at the arraignment on indictment. The First Circuit held that the lan-

guage of the bond requiring the defendant to surrender for sentence and providing that the bond remained in effect until exoneration plainly reflected parties' intent to cover appearances at trial. In *United States v. Miller*, 539 F.2d 445 (5th Cir.1976), the trial court granted the defendant a brief stay of execution of sentence, but he failed to appear for remand into custody as ordered. The Fifth Circuit held that the parties' intention, by inclusion of the "continuing bond" and "surrender for sentence" language, was that the surety would remain liable during "brief reasonable stays of execution of sentence."

8. One other case, *United States v. D'Anna*, 487 F.2d 899 (6th Cir.1973), relied heavily on state law in interpreting a bail bond. This bond did not include any reference to a "continuing bond" or "surrender for sentence." The Sixth Circuit, interpreting state law as it applied to the contract, held that the court could not extend the bail bond beyond sentencing without the consent of the surety.

9. Some courts compare the language of the bonds before them with the so-called "standard form" bail bond contract, appended to the Federal Rules of Criminal Procedure. *E.g., Catino,*

the Court concludes that the reasonable intention of the parties to this bail bond contract was not to create a bond covering appearances during or after appeal. It was not the intention of the parties that this bond be in effect during the appellate process.

This conclusion, based on the plain meaning of the bail bond, is borne out by the parties' actions. Defense counsel, at the sentencing hearing of June 11, 1984, asked for a short stay or extension so that he could file the notice of appeal and arrange for an appellate bond. This request evidences Mr. Banks intention (as represented through his defense counsel) that the bond cover only trial court appearances before appeal.[10] Also, the defense counsel represented that he had contacted the "original bail bondsman" who "originally posted this bond."[11] The reference to "original" suggests that Mr. Banks' contemplated that a "subsequent" bond would be necessary on appeal.[12]

Thus, based on the language of the contract itself, a comparison with language of other bail bonds, and the parties' actions as evidence of their intentions, the Court concludes that the parties intended that the bail bond only cover appearances before

the district court occurring before the final judgment was appealed.

### III

The additional issue remains as to whether Judge Irving could order the appearance bond executed by Dependable to continue in effect during the appeals period despite the parties' intentions that the bond terminate before appeal.

Dependable argues that it cannot be held responsible for Banks' appearances after sentencing because the increased risk of flight after sentencing was not something it bargained for when entering the bail bond. The government apparently argues that Judge Irving could extend the appearance bond's coverage, under the reasoning of the *Martinez* case and an extension of the *Gonware* holding.

The *Martinez* court, in the course of interpreting a bail bond set and posted at the pretrial stage, engaged in an extensive analysis of the comparative risks of flight prior to and during appeal.[13] The court concluded that the risk of flight during appeal of a conviction was not necessarily greater than that during a brief stay of execution of sentence, where typically a

562 F.2d at 3. Form 17, which was abrogated effective August 1, 1983, contained language very similar to that of Dependable's bond and did not contain the language regarding "continuing bond" or "surrender for execution of sentence." Apparently there was some question as to the proper interpretation of Form 17. According to *United States v. Amend,* 622 F.2d 782, 787 (5th Cir.1980) (Brown, J., concurring), Form 17 was altered by the Administrative Office subsequent to the *Dinneen* case to explicitly provide that "this is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned are duly exonerated."

**10.** Mr. Banks' counsel was very much aware of the terms of the bond and the circumstances of its execution, since counsel "made the arrangements for the bail bondsman to reduce or be able to negotiate even the ten percent in this case." *See supra* note 1.

**11.** *See supra* note 1.

**12.** The government could argue, however, that Banks' failure to secure a separate appellate bond evidences his intention that the appear-

ance bond remain in effect during the appeals process. More likely, Mr. Banks' failure to obtain a separate appeals bonds is evidence of his desire to avoid paying for another bond. It is not known why Mr. Banks did not obtain the separate appeals bond. The government's inference from Mr. Banks' failure to secure a bond is outweighed by the plain meaning of the contract language and the discussion between counsel and court at the June sentencing.

**13.** Many courts have considered the "risk of flight" argument in interpreting the language of bail bonds. The major assumption underlying the rationale is that a defendant is much more likely to flee once sentence has been handed down. As a practical matter, the risk of flight in most cases would seem to increase at the time of conviction, rather than at the time of sentencing. However, appearance bonds have uniformly been held to be in effect up to and including the sentencing after conviction, regardless of whether an appeal is taken. *Miller,* 539 F.2d at 449; *Gonware,* 415 F.2d at 84–85.

separate appeals bond is not obtained. *Id.* at 479. According to the *Martinez* court, if the trial judge, after balancing the increased risk of flight after conviction against defendant's record in making appearances during trial, concludes that bond on appeal should remain at the same amount as the trial bond, he has implicitly determined that risk of flight is not increased on appeal. Thus, the appearance bond could be continued as an appeal bond as the surety was not taking on a risk of liability greater than it had bargained for. The court reasoned that, if courts can permissibly extend an appearance bond for a short period during a stay of execution of sentence, as in *Gonware,* then an appearance bond could also remain effective during appeal.

What the *Martinez* court failed to recognize, however, is that the surety's obligation or scope of liability is not affected just by the amount of bond subject to forfeiture. "Converting" an initial appearance bond into an appeals bond does materially affect the surety's risk, even if the amount of the bond remains the same. The surety, Dependable in this case, entered the appearance bond contract based on the expectation and understanding that the surety's liability would cease before appeal. Extending the time frame of the bond such that the surety remains accountable for defendant's appearances during or after appeal plainly increases the surety's risk beyond what it bargained for. Such an extension is not the same as an extension for a brief, reasonable, and definite period of time, as with the *Gonware*-type short stays of execution of sentence. The time when a criminal conviction is on appeal is neither brief nor definite.[14] Thus extending a bond throughout appeal is unlike the common practice of extending an appearance bond during a brief stay of execution of sentence. Given the wide-spread nature of the practice, it can safely be said that sureties are aware of this practice and adjust for the risk accordingly when executing the bail bond contract.[15]

Thus, although a court may implicitly acknowledge that the risk of flight for a particular defendant does not increase during appeal by fixing bail on appeal in the same amount, the surety's risk is nonetheless increased when the term of the contract is extended beyond the contemplation of the parties. The court has no authority to change a term in the contract without the surety's consent, when that change increases the surety's obligation. *See United States v. LePicard,* 723 F.2d 663, 665 (9th Cir.1984) (no authority holding that court can unilaterally impose on the bail surety a new and different obligation). *Cf. United States v. Galvez-Uriarte,* 709 F.2d 1323, 1324 (9th Cir.1978) (government may not increase surety's risk without surety's knowledge and consent).

## IV

In conclusion, the Court finds that the parties intended that the bail bond at issue, executed on January 18, 1984, apply only to appearances before the district court prior to appeal of Mr. Banks' conviction. Although the appearance before the district court to spread the Ninth Circuit's mandate was technically an appearance "before the district court", it was not an appearance contemplated by the parties under the contract.

All of the bond's conditions were fulfilled and the bond could have been exonerated as of the June 1984 sentencing. *See* Fed.R. Crim.P. 46(f) (court shall exonerate the obligors and release any bail when the condition of the bond has been satisfied). The bond is hereby ordered exonerated. Dependable's motion to set aside forfeiture is granted; government's motion to enter de-

**14.** In this case, defendant filed his notice of appeal on June 22, 1984. The Ninth Circuit affirmed his conviction on March 22, 1985—exactly nine months later. In 1984, in the Ninth Circuit the median time for all appeals (civil and criminal) from filing of the complete record to disposition was 9.5 months. This figure compares to 10.5 months in 1983, 13.3 months in 1982, and 17.3 months in 1981. 1984 Federal Court Management Statistics.

**15.** *Gonware,* 415 F.2d at 84.

fault judgment on forfeiture of the bond is denied.

IT IS SO ORDERED.